### 74209. BARNES v. HARLEY-DAVIDSON MOTOR COMPANY, INC.
(357 SE2d 127)

BIRDSONG, Chief Judge.

Breach of Manufacturer's Warranty — Strict Liability — Summary Judgment. Barnes was injured in an accident in August 1984, while driving his motorcycle. Barnes deposed that he had grown up riding motorcycles. Apparently he had owned and operated three of his own and had been using motorcycles for approximately 17-18 years. He had owned and operated a 1976 Harley-Davidson 1200 cc Super Glide model motorcycle for several years before the accident in August 1984. His father purchased the motorcycle for him in 1979. It was conceded that at the time of its purchase the motorcycle was in good operating condition and Barnes did not consider that the vehicle was without any equipment essential to its efficient operation. At the time of the acquisition, the motorcycle was not designed to have as standard equipment, and did not have, "crash bars" (to protect the motorcycle in the event of falling over during operation). Although Barnes had thought about installing crash bars as a safety feature, he had never done so. Also, the motorcycle was equipped with a standard motorcycle sealed beam unit (Par. 46 5¼") with a maximum candlepower of 22,000 on high beam and 10,500 on low beam, designed pursuant to Federal Motor Vehicle Safety Standard 108. That headlamp had been standard equipment on Harley-Davidson motorcycles since 1976 and there had been no change in design throughout the period of installation and use. Barnes stated that he had come to the belief that

the candlepower was inadequate at higher speeds but although he had personally replaced the sealed beam unit several times he had never sought to increase the candlepower nor placed a second or auxiliary lamp on the motorcycle. Barnes also conceded that he had no complaints about the operation of the vehicle or equipment upon the motorcycle prior to the accident in August 1984.

On August 7, 1984, one Bobby Howard was operating his automobile on Highway 78 just west of Lexington, Georgia. Howard experienced electrical failure in the ignition and his car stalled. Howard parked the stalled auto on the right shoulder of the road with the left front and back wheels just to the right of the white line constituting the edge of the westbound lane of the highway, thus just off the highway. After working unsuccessfully on the car for more than an hour to get it restarted, Howard and a friend apparently started to push the stalled vehicle toward Lexington. The friend apparently was pushing from the rear of the vehicle and Howard was pushing at the driver's door and presumably guiding the vehicle in its forward progress. Howard and his friend heard a loud noise which Howard stated he thought to be a truck. The appellant Barnes was approaching the stalled auto on his motorcycle at about 50-55 mph. Howard stated he never saw the approaching motorcycle and Barnes stated he never saw the stalled car. Barnes struck the driver's door of the stalled vehicle which was projecting several inches to a foot beyond the white line and thus slightly into the eastbound lane. Barnes' motorcycle struck the edge of the auto door with the right lower part of the motorcycle, causing him to lose control and ultimately to cause injuries to his right leg resulting in the amputation of the leg at a point just below the knee.

As a result of this accident, Barnes filed a complaint against his own insurer (Leader) and Howard. Because Barnes had deliberately refused coverage on uninsured motorist and paid no premium therefor, his insurer (Leader) was granted summary judgment and removed from the litigation. Barnes then brought Harley-Davidson in as a party defendant as the manufacturer of the motorcycle, upon the basis of strict liability contending that Harley-Davidson misdesigned the particular model motorcycle by not providing crash bars as standard equipment and using an inadequate headlight, both defects together making the motorcycle, as designed, not reasonably suited for the use intended, i.e., a safe two-wheeled vehicle. He further argues that Harley-Davidson was negligent in not warning Barnes as a consumer of the inherent dangers involved in using a product with no crash bars and inadequate lighting, a fact which he contends Harley-Davidson clearly would have greater knowledge about than a consumer. After extensive discovery, Harley-Davidson moved for summary judgment contending there was no breach of any express or im-

plied warranty and that Barnes had assumed any risk involved in the use of the motorcycle without crash bars or with what he considered inadequate lighting. The trial court granted the motion for summary judgment filed by Harley-Davidson and this grant forms the basis for the appeal by Barnes. *Held*:

Although Barnes enumerates 7 separate asserted errors, each is simply a different facet of the same argument. We are at once confronted with the obvious facts that Barnes was a very knowledgable and experienced operator of motorcycles. He had operated the motorcycle upon which the accident occurred for approximately 4-5 years. He had been taught rules of safe driving and was familiar with motorcycles generally, including the different equipment that was furnished as standard safety features and equipment on different models of motorcycles. He conceded that there was no apparent defect in the model 1200 cc Super Glide when it was purchased and that he had used it successfully throughout his ownership. He conceded further that the motorcycle was provided with all the equipment that it was designed to have. He knew the model he owned and was riding at the time of the accident did not come equipped with crash bars. Though he knew crash bars probably afforded greater safety for the rider, he never undertook to purchase or install crash bars on the motorcycle. Moreover, he acknowledged that the headlamp worked as designed; it came on when energized and went off when switched off. He agreed that the high beam afforded more forward light than did the low beam but did not know whether the lamp was on high or low beam at the time of the accident. Though Barnes deposed that he personally believed the lamp afforded too little light, especially in very dark areas when driving at high speeds, he had changed the seal beam on several occasions but had made no efforts to increase the intensity of the light by installation of a more powerful seal beam or to attach a second lamp. It was shown and not disputed that the headlamp installed by Harley-Davidson was in accordance with federal standards and that Harley-Davidson had used the same design and intensity light since 1976. In substance then the evidence showed that Barnes had no complaints concerning the operation of the motorcycle throughout his ownership and that if there were defects within his own contemplation, these defects were patent.

In relation to the asserted design defect of inadequate light, we are constrained to conclude that the evidence established the light met federal standards. Assuming that Barnes had concluded the light nevertheless was inadequate, it is also clear that such defect was at least as well known to him as to the manufacturer. The conclusion is inescapable that by his continuing use of the motorcycle even after his belief that the light was insufficient, Barnes assumed any risk attendant to continued operation. In an earlier "headlight" case, this

court quoted with approval the following language: "If a manufacturer does everything necessary to make the machine function properly for the purpose for which it is designed, if the machine is without any latent defect, and if its functioning creates no danger or peril that is not known to the user, then the manufacturer has satisfied the law's demands. We have not yet reached the state where a manufacturer is under the duty of making a machine accident proof or foolproof. . . . [H]e is under no duty to guard against injury from a patent peril or from a source manifestly dangerous. Nor is there a duty on the manufacturer or seller to warn of obvious common dangers connected with the use of a product." (Citations and punctuation omitted.) *Poppell v. Waters,* 126 Ga. App. 385, 387-388 (190 SE2d 815). A product is not in a defective condition when it is safe for normal handling. If injury results from abnormal handling the manufacturer is not liable. *Center Chem. Co. v. Parzini,* 234 Ga. 868, 869 (218 SE2d 580). Even assuming the light created a hazard under certain conditions, Barnes was aware that under those conditions the light was insufficient for safe driving. Thus logically it was the excessive speed at night that created those circumstances (driving too fast for effective illumination of the road ahead) and thus Barnes caused through his own voluntary act the lack of sufficient light to minimize or forestall the collision. Under such circumstances we must conclude that Barnes assumed the risk of the alleged patent defect and excused any liability for the insufficiency of light. The candlepower of the light was a mere circumstance of the accident and not its proximate cause. *Mann v. Hart County Elec. &c. Corp.,* 180 Ga. App. 340-341 (349 SE2d 215).

As to the alleged failure by the manufacturer to install crash bars as standard equipment, we have previously considered such an allegation. In the case of *Hunt v. Harley-Davidson Motor Co.,* 147 Ga. App. 44, 46-47 (248 SE2d 15), we held: " 'A manufacturer or a seller does not have the status of an insurer as respects products design. Since it is patent that virtually any article, of whatever type or design, is capable of producing injury when put to particular uses or misuses, a manufacturer has no duty so to design his product as to render it wholly incapable of producing injury. . . .' A motorcycle by its nature subjects the rider to a greater risk of injury than other forms of transportation; neither the legislature nor the common law has imposed upon the motorcycle manufacturer the duty of installing crash bars and we also decline to do so. As the facts show that [Harley-Davidson] did not breach its duty to design and manufacture its product for the ordinary purposes for which it was intended, the trial court did not err in granting summary judgment for [Harley-Davidson]." Barnes asks us to reconsider this holding and reverse it. We find no cogent reason for doing so. Moreover, it is clear that Barnes was

aware of the greater attendant risk of operating a motorcycle without crash bars and thus his assumption of that risk was the proximate cause of his own injuries. *Mann v. Hart County EMC*, supra.

Likewise, we must reject Barnes' argument that the motorcycle was designed with an inherent defect. As previously discussed, there is no independent responsibility upon a manufacturer of a motorcycle to furnish crash bars as standard equipment. The facts show that the motorcycle was functional and suitable for the purpose for which it was intended. The light was a standard light which apparently met federal standards. The facts thus establish that Harley-Davidson had done everything necessary to make the machine function for the purpose intended. Barnes made no showing in the record there were any latent defects. For all the record shows, the ordinary use of the machine created no danger or peril that was not known to Barnes. Under these circumstances, Harley-Davidson satisfied the demands of the law for product safety and suitability. *Coast Catamaran Corp. v. Mann*, 171 Ga. App. 844, 847 (321 SE2d 353). Because the design of the motorcycle apparently met all requirements of the law in designing a motorcycle for ordinary use on the highways, we cannot conclude that Harley-Davidson failed to meet the required standards of reasonable care. *Hunt v. Harley-Davidson Motor Co.*, supra. Inasmuch as we are unable to find any evidence of a design defect in this record, it follows the manufacturer did not breach any duty of reasonable care in its design nor did it fail to create a safe product as a matter of law. *Coast Catamaran Corp. v. Mann*, supra at p. 848. Likewise, because we have found no inherent or latent defect, there can be no duty to warn Barnes of a nonexistent latent defect. We can find no error in the grant of summary judgment to Harley-Davidson.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED APRIL 20, 1987 —
REHEARING DENIED MAY 1, 1987 —

*Kenneth Kalivoda, David R. Montgomery*, for appellant.
*William T. Gerard, Howard T. Scott*, for appellee.