A89A2056. WEATHERBY et al. v. HONDA MOTOR COMPANY, LTD. et al.

(393 SE2d 64)

McMURRAY, Presiding Judge.

This is a product liability case involving a Honda Model Z50R. This scaled-down off-road motorcycle had been purchased by Jerry Weatherby for the enjoyment of his family. On March 14, 1984, defendant Edwards, a friend and houseguest of the Weatherbys, gave five-year-old plaintiff Randy Weatherby a ride on the Honda. Defendant Edwards knew that there was no cap on the gasoline tank of the Honda. During the ride over uneven terrain gasoline splashed from the open tank and was ignited, causing severe burns to plaintiff Randy Weatherby.

Plaintiff Randy Weatherby proceeding by next friend, his mother Ivy Weatherby, along with plaintiffs Ivy Weatherby and Jerry Weatherby, individually, filed this action for damages against defendant Edwards, American Honda Motor Company, Inc., Honda Research and Development Company, Ltd., and Honda Motor Company, Ltd. The action against Honda Research and Development Company, Ltd., was dismissed pursuant to a stipulation that the remaining two Honda corporations (hereafter "the Honda defendants") will assume the responsibility and liability, if any, of Honda Research and Development Company, Ltd.

The complaint alleges that the injury to plaintiff Randy Weatherby occurred due to the negligence of defendant Edwards and because the Honda motorcycle was negligently designed, manufactured, and distributed, and was unreasonably dangerous due to a defective design. The action against the Honda defendants which was couched in terms of negligence, strict liability, and breach of warranty is based on the absence of any device attaching the cap to the gasoline tank so as to remind a person to put it in place prior to operation; the absence of a safety device covering the spark plug which would prevent any contact with flammable objects; the absence of a device or foam lining which would prevent fuel spillage in the event the gas cap is not on the tank; and inadequate warnings of the defective nature of the motorcycle.

The Honda defendants moved for summary judgment relying upon the "open and obvious rule" (also known as the "patent danger rule"), that is, that a product is not defective if the absence of a safety device is open and obvious, and there is no duty to warn of an obvious danger. The absence of a device connecting the gas cap to the tank, and the danger attendant to riding a motor bike with an uncapped gas tank could not be more open and obvious, argued the Honda defendants. Plaintiffs appeal the grant of summary judgment in favor of the Honda defendants. *Held*:

On appeal, the Honda defendants continue to rely upon the "open and obvious" rule. Plaintiffs present several arguments in support of their contention that this rule is inapplicable, and argue that this case is controlled by our recent decision in *Ogletree v. Navistar Intl. &c. Corp.*, 194 Ga. App. 41 (390 SE2d 61) (1989).

Plaintiffs' reliance on *Ogletree v. Navistar Intl.*, 194 Ga. App. 41, supra, has compelled our review of the facts and law of that case. We have found that while the facts in *Ogletree* and the present case are similar, we are unable to follow *Ogletree* since it is predicated upon significant errors of law. It appears that we have inadvertently strayed from our settled adherence to the "open and obvious rule," perhaps to the point of seemingly abandoning that principle. While the "open and obvious rule" has been the subject of considerable criticism and has been abandoned in some other jurisdictions, including New York where it originated, it continues to be the law in Georgia. *Stodghill v. Fiat-Allis Constr. &c.*, 163 Ga. App. 811, 813 (295 SE2d 183). Therefore, insofar as it fails to correctly apply the "open and obvious rule," *Ogletree v. Navistar Intl.*, supra, must be overruled.

"In a products liability case predicated on negligence, the duty imposed is the traditional one of reasonable care and the manufacturer need not provide, from a design standpoint, a product incapable of producing injury. *Greenway v. Peabody Intl. Corp.*, 163 Ga. App. 698, 699 (1) (294 SE2d 541) (1982). Georgia law does not require a manufacturer to occupy the status of an insurer with respect to product design, *Hunt v. Harley-Davidson Motor Co.*, 147 Ga. [App.] 44, 46 (4) (248 SE2d 15) (1978), or to provide a collision safe vehicle. *Friend v. Gen. Motors Corp.*, 118 Ga. App. 763, 764 (2) (165 SE2d 734) (1968). The manufacturer is under no obligation to make a machine 'accident proof or foolproof,' *Fortner v. W. C. Cayne Co.*, 184 Ga. App. 187, 190 (2) (360 SE2d 920) (1987), and *Poppell v. Waters*, 126 Ga. App. 385, 387 (1) (190 SE2d 815) (1972), or even 'more safe.' *Stovall & Co. v. Tate*, 124 Ga. App. 605, 611 (1) (184 SE2d 834) (1971). The public policy enunciated by the legislature is a predominant factor in our determination. *Rhodes v. R. G. Indus.*, 173 Ga. App. 51, 52 (1) (325 SE2d 465) (1984).

"Here the vehicle is not alleged to be defective in the operational

sense but in that it did not contain what the plaintiffs contend to be the best or more advanced safety device. The instant situation is inapposite to *Ford Motor Co. v. Stubblefield*, 171 Ga. App. 331 (319 SE2d 470) (1984), which involved a defective injury-causing component rather than the absence of a superior safety device. If a 'product is designed so that it is reasonably safe for the use intended, the product is not defective even though capable of producing injury where the injury results from an obvious or patent peril.' *Coast Catamaran Corp. v. Mann*, 171 Ga. App. 844, 847 (2) (321 SE2d 353) (1984) (affirmed *Mann v. Coast Catamaran Corp.*, 254 Ga. 201 (326 SE2d 436) (1985)), where it was observed that with regards [to] a product-design case 'only semantics distinguishes' between a cause of action for negligence and liability under OCGA § 51-1-11. See *Griffin v. Crown Central Petroleum Co.*, 171 Ga. App. 534 (320 SE2d 383) (1984)." *Honda Motor Co. v. Kimbrel*, 189 Ga. App. 414, 418 (376 SE2d 379).

Care should be taken to distinguish between the "open and obvious rule" and the affirmative defenses of contributory and comparative negligence and assumption of the risk. Although the rationale of the "open and obvious rule" is similar to that of these affirmative defenses, there are important substantive distinctions between them. In determining, under the "open and obvious rule," whether the peril from which an injury results is latent or patent, the decision is made on the basis of an objective view of the product, and the subjective perceptions of the user or injured party are irrelevant. See 35 ALR4th 861; 96 ALR3rd 22; 95 ALR3rd 1066; 63 AmJur2d Products Liability §§ 342; 369; 378; 932; and 936; and Darling, The Patent Danger Rule: An Analysis & A Survey of Its Vitality, 29 Mercer L. Rev. 683 (1978).

While the "open and obvious rule" imposes on a plaintiff the burden of proving that the peril-causing injury is latent, or not patent, the affirmative defenses of contributory and comparative negligence and assumption of the risk require a defendant to prove that a plaintiff's conduct was unreasonable under the circumstances or that plaintiff knowingly encountered a known danger with appreciation thereof. Thus, jury questions are often presented as to whether the affirmative defenses have been established.

It is not uncommon for issues concerning both the "open and obvious rule" and the similar affirmative defenses to arise in the same case. Both have been discussed in several Georgia cases and unfortunately, care has not been taken in all instances to separate or otherwise clearly distinguish which portion of a decision relates to a given principle.

Thus, we were led, in *Ogletree v. Navistar Intl. Corp.*, supra, to erroneously view the absence of evidence pertaining to the subjective perceptions of that plaintiff's decedent as relevant to our analysis

concerning the applicability of the "open and obvious rule." Actual knowledge by the user of the danger posed by a product is *not* necessary in order to invoke the "open and obvious rule." 63 AmJur2d Products Liability, § 342; *Poppell v. Waters*, 126 Ga. App. 385, 388 (190 SE2d 815); *Stodghill v. Fiat-Allis Constr. &c.*, 163 Ga. App. 811, supra. In *Ogletree*, we should have directed our attention to whether an objective view of the truck disclosed that the absence of the back-up alarm was open and obvious, and as an affirmative conclusion was clearly warranted, we should not have reversed the grant of summary judgment to defendant Navistar International Transportation Corporation.

Furthermore, in regard to *Ogletree v. Navistar Intl. Corp.*, supra, we must also acknowledge that our reliance upon *Verge v. Ford Motor Co.*, 581 F2d 384 (3rd Cir. 1978), was misplaced, particularly insofar as we drew therefrom a balancing analysis concerned with economic feasibility, technological feasibility, and practicality. Those jurisdictions which have abandoned or rejected the "open and obvious rule," have nonetheless generally chosen to consider the patency of a particular defect as a factor in determining whether a product is unreasonably dangerous. In those jurisdictions, factors such as those stated in *Verge* are considered along with patency to determine if a duty exists with respect to the patent defects. 35 ALR4th 861, 865, § 2(a); 95 ALR3rd 1066, 1070, § 2(a). The factors taken from *Verge* are not relevant to the application of the "open and obvious rule" which prevails in Georgia.

Finally, we reach the issue of whether the "open and obvious rule" is applicable to the case sub judice. While we begin our objective view of the motorcycle by noting that the absence of a safety device to prevent loss of the gas cap or prevent fuel spillage when the gas cap is removed is patent, such does not address the entire issue submitted. Ultimately, the peril at issue in this case is the open fuel tank resting over the engine and its spark plug. The open fuel tank surely suggests the possibility of spillage and particularly so, on a vehicle designed for off road use. As the fuel tank is located above the engine, gravity can be anticipated to bring the spilled fuel in contact with the engine and spark plug.

While plaintiffs argue that the dangers of spilled gasoline coming into contact with an engine are not generally known, we hold otherwise. Gasoline is well known as an extremely flammable substance which may be easily ignited when subjected to heat or electrical impulses such as found about the surface of an operating gasoline engine. *Giordano v. Ford Motor Co.*, 165 Ga. App. 644 (299 SE2d 897) may be distinguished on the facts. The attempt to prime the carburetor in that case involved an attempt to place a small quantity of gas into the pathway through which fuel was ingested by the engine dur-

ing its normal operation and is in no way analogous to the uncontrolled spillage of gasoline about the exterior of the engine in this case.

Plaintiffs contend that the motorcycle was a toy and that, as such, it should be viewed through the eyes of a child in determining whether the risks presented by the product are open and obvious. This contention appears to be contradicted by *Poppell v. Waters*, 126 Ga. App. 385, supra, wherein the absence of a headlight and reflectors from a bicycle used by a 12-year-old child was held to be open and obvious without any apparent application by this court of a child's standard. Plaintiffs' reliance on *Milton Bradley Co. v. Cooper*, 79 Ga. App. 302 (53 SE2d 761), is misplaced as that was not a products liability case, nor did it involve the application of the "open and obvious rule." Furthermore, even if some alteration of the "open and obvious rule" is deemed appropriate where a toy is involved, this is not an appropriate case for its application. While the Honda Motorcycle was marketed for use by older children, it was not marketed for use by five-year-old children such as plaintiff Randy Weatherby. Nor in fact was plaintiff Randy Weatherby ever permitted to operate the motorcycle, he was only allowed to ride as a passenger with his father or defendant Edwards.

"While in many cases the defense based upon the obvious and common nature of the peril will be a question to be determined by the jury, a manufacturer is entitled to judgment as a matter of law in plain and palpable cases." *Coast Catamaran Corp. v. Mann*, 171 Ga. App. 844, 846 (2), 848 (321 SE2d 353). We conclude, as a matter of law, that the injuries at issue in this case resulted from an obvious or patent peril. It follows that plaintiffs are barred from recovery on theories of negligence or strict liability. *Barnes v. Harley-Davidson Motor Co.*, 182 Ga. App. 778 (357 SE2d 127); *Coast Catamaran Corp. v. Mann*, 171 Ga. App. 844, 846 (2), supra; *Stodghill v. Fiat-Allis Constr.*, 163 Ga. App. 811, supra; *Poppell v. Waters*, 126 Ga. App. 385 (1, 3), supra; *Stovall & Co. v. Tate*, 124 Ga. App. 605, 609 (1) (184 SE2d 834).

A manufacturer is under no duty to warn of a product-connected danger which is obvious or generally known. *Barnes v. Harley-Davidson Motor Co.*, 182 Ga. App. 778, 781, supra; *Coast Catamaran Corp. v. Mann*, 171 Ga. App. 844, 846 (2), supra; *Poppell v. Waters*, 126 Ga. App. 385, 388, supra. Therefore, plaintiffs are also barred from recovery insofar as their claim is predicated on inadequate warnings.

Finally, plaintiffs' claim based on breach of warranties must also fail due to lack of privity. Jerry Weatherby purchased the used Honda motorcycle several years after it was manufactured. Plaintiffs were not the beneficiaries of any warranty, express or implied, arising from the manufacture of the motorcycle. OCGA § 11-2-318; *Stovall &*

*Co. v. Tate*, 124 Ga. App. 605, 614 (3), supra.

Summary judgment is appropriate where there is no genuine issue of material fact. The superior court did not err in granting summary judgment in favor of the Honda defendants.

*Judgment affirmed. Deen, P. J., Banke, P. J., Birdsong, Sognier and Pope, JJ., concur. Carley, C. J., and Beasley, J., concur specially. Cooper, J., disqualified.*

BEASLEY, Judge, concurring specially.

I concur in the affirmance of summary judgment but not in all that is written in reaching that resolution. I also dissent from the overruling of *Ogletree v. Navistar Intl. &c. Corp.*, 194 Ga. App. 41 (390 SE2d 61) (1989), cert. den. March 13, 1990, and do not fully agree with the majority's analysis of *Ogletree*.

*Ogletree* was correct in its two-fold analysis. It focused first on the injured party, as the law provides that if the "defect" and danger arising therefrom were open and obvious to him, then the parties representing his position would be precluded from recovery. There were questions of fact remaining after all the evidence was considered.

A subjective test is applicable when examining the relationship between the injured person and the product, because it is the knowledge and actions of this particular person or the user which are at issue.

If Ogletree knew of the defect and the danger, i.e., if it were subjectively open and obvious to him, then whether or not the manufacturer owed a duty to the world in general would not be reached as it would prevail on the affirmative defense of assumption of the risk. See *Yaeger v. Canadair, Ltd.*, 189 Ga. App. 207, 208 (375 SE2d 469) (1988), for a recognition of this principle. Barnes, in *Barnes v. Harley-Davidson Motor Co.*, 182 Ga. App. 778, 780 (357 SE2d 127) (1987), was in this position. So was the child in *Poppell v. Waters*, 126 Ga. App. 385, 386 (1) (190 SE2d 817) (1972), and Hunt in *Hunt v. Harley-Davidson Motor Co.*, 147 Ga. App. 44 (1) and (2) (248 SE2d 15) (1978).

We concluded in *Ogletree* that from the state of the evidence at that summary judgment stage, the record did not establish conclusively that he knew there was a blind spot in the driver's field of vision coupled with an absence of a warning device which would alert him to the danger of the truck's hitting him. He, as a person located behind the moving truck, would be the intended beneficiary of a backup alarm. If he knew, of course, Navistar would be entitled to judgment in its favor. *Barnes*, supra, is illustrative.

The same applied to the operator. If he had actual knowledge, not only of the absence of a backup alarm and of a blind spot but also of the danger which such presented under the circumstances, i.e., if

these were open and obvious to him, then the manufacturer would be shielded by what amounted to an intervening cause. That was the case in *Stovall & Co. v. Tate*, 124 Ga. App. 605 (184 SE2d 834) (1971). The evidence was not conclusive in *Ogletree*.

The Supreme Court, in *Mann v. Coast Catamaran Corp.*, 254 Ga. 201, 202 (326 SE2d 436) (1985), alluded to the particular use in question: " 'If the injury results from abnormal handling . . . the seller is not liable.' " There was no abnormal operation of the truck in *Ogletree*, as it was simply being driven rearwards, albeit there may have been negligence on the operator's part as to the caution he took. In sum, there was not a preclusion of liability arising from the affirmative defense of total fault attributable to the user or injured party or both in the particular instance of use.

We then focused on the manufacturer's duty, the first element of a tort, and examined whether the evidence established that it had no duty to install a backup alarm. Such a device would be primarily for the protection of people and objects located behind the truck when it was being backed up, rather than for the protection of the operator. The Supreme Court in *Mann* focused on the duty aspect in its opinion. It pointed out that in claims based on OCGA § 51-1-11 (b), which is invoked here and was the foundation of the *Ogletree* claim, a product " 'is not in a defective condition when it is safe for normal handling and consumption.' " In *Ogletree*, there was evidence that it was reasonably foreseeable that an operator would back the truck up without full vision, due to blind spots created by whatever was mounted on the truck. The Supreme Court in *Mann* recognized that the manufacturer's duty is, for one thing, to provide adequate warnings and instructions for use, in order for the product to be deemed not defective in law.

We applied the objective standard of "open and obvious" in viewing the manufacturer's relationship to the product in Ogletree's case, applying the traditional "reasonably foreseeable" test. See *Ford Motor Co. v. Stubblefield*, 171 Ga. App. 331, 335 (2) (319 SE2d 470) (1984). We discovered that there was evidence of reasonable foreseeability and resultant inadequacy. The ultimate resolution was left to the jury because of disputed material facts.

Thus there was no departure in *Ogletree* from decisional law. The majority in the case now under consideration may differ with the result in *Ogletree* insofar as the extent to which a manufacturer's duty extends, but the principles on which it was based were not askew. There is no cause to overrule it, which would not affect the ruling made for that case nor change, for future cases, the principles applied in it.

The *Weatherby* case differs significantly. For one thing, the product was being used in an abnormal manner, and " 'the injury re-

sult[ed] from abnormal handling.' " *Mann*, supra at 202. The off-road one-seat motorcycle, which had the gas tank in front of the seat, was being driven off-road by an adult who had allowed the child to sit in front of him on top of the gas tank and immediately behind the opening at the top through which the adult had just put gas. He did not put the safety device, the gas cap, on because he did not know where it was and had often operated the cycle without it. The gas sloshed out and ignited when he drove down a dip in the terrain. It was "open and obvious" to him, *subjectively*, that he was riding on a rough surface with gasoline exposed to a motor.

That does not preclude recovery, say the Weatherbys, because there is no evidence that the danger was open and obvious to the injured party, the child. Even if it were not, however, the manufacturer would not be liable if it owed to the child none of the duties claimed. So the next consideration turns to the manufacturer.

Analogous to *Mann*, the product as manufactured "was reasonably suited for its intended purpose" of movement off-road. The absence of an additional safety device, to create a failsafe mechanism should the primary safety device, the gas cap, not be used, would not only be irrelevant to the cycle's "functioning properly in its intended use," in *Mann*'s words, but would come close to requiring the manufacturer to be an insurer. As pointed out in the majority opinion and in *Ogletree*, Georgia law does not impose such a duty. It would be a burden far beyond what the manufacturer should reasonably perceive being needed when the product is put to its intended use. That is to say, Honda would not be expected to foresee that someone would do what was done in this case, so as to create a duty to preclude injury by installing a secondary-stage protective device to keep gasoline confined or at least away from an open source of ignition, or to warn of danger from the absence thereof. Both were *objectively* "open and obvious," not latent.

I am authorized to state that Chief Judge Carley joins in this special concurrence.

DECIDED MARCH 16, 1990 —
REHEARING DENIED MARCH 28, 1990 — 

*Robert K. Finnell, Ellerin & Williams, Irwin M. Ellerin, Denise A. Hinds* for appellants.

*King & Spalding, Lanny B. Bridgers, Sally C. Quillian, Steven J. Estep,* for appellees.

*David Boone,* amicus curiae.