**Patricia P. NEAL, Plaintiff,**

v.

**TOYOTA MOTOR CORPORATION and Toyota Motor Sales, USA, Inc., Defendant.**

**Farris PATTY, Plaintiff,**

v.

**TOYOTA MOTOR CORPORATION and Toyota Motor Sales, USA, Inc., Defendant.**

Civ. A. Nos. 4:91–CV–63–HLM, 4:91–CV–62–HLM.

United States District Court, N.D. Georgia, Rome Division.

June 9, 1993.

Robert David Cheeley, James Edward Butler, Jr., and Patrick Alan Dawson, Butler Wooten Overby & Cheeley, Atlanta, GA, for plaintiffs.

Benjamin Louis Weinberg, Jr., and C. Bradford Marsh, Long Weinberg Ansley & Wheeler, Atlanta, GA, for defendants.

## ORDER

HAROLD L. MURPHY, District Judge.

These consolidated personal injury cases are before the Court on Defendant Toyota Motor Corporation's Renewal of its Motion for Judgment as a Matter of Law, Toyota Motor Corporation's Motion for a New Trial/Remittitur and Plaintiffs' Motion to File a Supplemental Brief.[1] Defendant Toyota Motor Corporation ("TMC" or Defendant)[2] renews its Motion for Judgment as a Matter of Law because it contends that this case is governed by Georgia's Open and Obvious Danger Doctrine. Defendant claims that the injuries suffered by Plaintiffs were caused by an open and obvious danger. Defendant also contends in its Motion for a New Trial that (1) Plaintiffs' lawyer delivered an improper closing argument which allowed an alien cause to invade the trial, (2) the jury rendered a verdict based on passion and prejudice, or (3) the jury's verdict was so excessive and grossly disproportionate to the evidence as to shock the judicial conscience. Therefore, according to Defendant, the Court should grant it a new trial or in the alternative enter a remittitur of the verdict. Plaintiffs, of course, disagree with Defendant's contentions.

---

1. The Court denies Plaintiffs' Motion to File a Supplemental Brief as being completely devoid of any merit. The information contained in the motion is not only hearsay and unsubstantiated, it is also totally irrelevant to the instant cause of action.

2. The Court dismissed Defendant Toyota Motor Sales USA, Inc. during trial so the pending motions only concern TMC.

This case involves a very gruesome automobile accident which luckily did not result in a fatality. The accident occurred when Plaintiffs were travelling on Interstate 75 in a 1988 Toyota Corolla and exited the highway on an exit ramp south of Dalton, Georgia. At trial, Plaintiffs claimed that a floor mat shifted on the floor of the Corolla and overlapped the gas pedal and brake to such an extent that Mrs. Neal could not stop the car before it crashed into the side of, and partially slide underneath, a semi-tractor trailer. Defendant, after trying to rebut Plaintiff's theory, basically argued that because no physical defect existed with the car, driver error must have caused the accident. Both Plaintiffs were severely injured. Plaintiff Neal had medical bills totaling $41,945.90 and Plaintiff Patty had medical bills totaling $127,559.85. After a six day trial, the jury entered a verdict in favor of both Plaintiffs for $1,000,000 each.

### TMC'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

■ TMC renews its motion for judgment as a matter of law which it presented at the end of the trial. See FED.R.CIV.P. 50(b). Basically, TMC argues that it was open and obvious to a reasonable person that the floor mats could slide around in the car and impinge the brakes and gas pedal as Plaintiffs' claim happened here. Therefore, Defendant contends that Georgia law bars Plaintiffs' recovery for any injury caused from such movement as it resulted from an open and obvious danger. The Court does not agree.

### 1. RULE 50 MOTION FOR JUDGMENT AS A MATTER OF LAW STANDARD

■ Federal Rule of Civil Procedure 50(a)(1) states:

If during a trial by jury a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue, the Court may grant a motion for judg-

ment as a matter of law against that party on [that] claim....

*Id.* In ruling on a Rule 50(b) motion, the Court should consider all the evidence in the light most favorable to the party opposed to the motion and with all reasonable inferences drawn in their favor. *Miles v. Tennessee River Pulp and Paper Co.*, 862 F.2d 1525, 1528 (11th Cir.1989) (citations omitted). If substantial evidence exists that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions, the Court should deny the Rule 50(b) motion. *Id.*

### Open and Obvious Danger Doctrine

■ In a products liability case under Georgia law,[3] a manufacturer does not act as an insurer with respect to product design and he is not under an obligation to make the product accident free. *Weatherby v. Honda Motor Co.*, 195 Ga.App. 169, 170, 393 S.E.2d 64 (1990). If "a product is designed so that it is reasonably safe for the use intended, the product is not defective, even though capable of producing injury where the injury results from an obvious or patent peril." *Id.* at 171, 393 S.E.2d 64. "Conceivably, any manufactured good is capable of inflicting injury; and, indeed, the use of certain products ... may be considered intrinsically dangerous. Recognizing this fact, [the Georgia courts have] held that a manufacturer has no duty to warn of obvious dangers connected with the use of a product." *Branton v. Draper Corp.*, 185 Ga.App. 820, 822, 366 S.E.2d 206 (1988) (citations omitted). Although the defense of open and obvious can be a fact question for the jury, "a manufacturer is entitled to judgment as a matter of law in plain and palpable cases." *Coast Catamaran Corp. v. Mann*, 171 Ga.App. 844, 848, 321 S.E.2d 353 (1984), *aff'd*, 254 Ga. 201, 326 S.E.2d 436 (1985).

In deciding whether the danger is open and obvious, "the decision is made on the basis of an objective view of the product, and the subjective perceptions of the user or injured party are irrelevant." *Weatherby,*

---

**3.** In cases where the Court exercises diversity jurisdiction, like the case *sub judice*, the Court must apply the substantive law of the state where the Court is located. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

195 Ga.App. at 171, 393 S.E.2d 64. Contrary to Plaintiffs' repeated assertions that Mrs. Neal did not know that the floor mats could impinge the pedals, "actual knowledge by the user [of the product] of the danger posed by a product is not necessary in order to invoke the 'open and obvious rule.'" *Id.* at 172, 393 S.E.2d 64.

Here, the Court cannot say that the particular danger involved in this case, a floor mat shifting its position so as to encumber the brakes thereby preventing the brakes from being depressed and stopping the car, was open and obvious to a reasonable person from an objective point of view. The Georgia cases which espouse the open and obvious doctrine all concern injuries where a reasonable person viewing the accident in question could identify the exact propensity for danger involved. *See, e.g., Wilson v. Bicycle South, Inc.,* 915 F.2d 1503 (11th Cir.1990); *Gragg v. Diebold, Inc.,* 198 Ga.App. 823, 403 S.E.2d 229 (1991); *Stodghill v. Fiat–Allis Constr. Machinery,* 163 Ga.App. 811, 295 S.E.2d 183 (1982). To carry Defendant's theory to its end, the open and obvious doctrine would prevent recovery for any car accident because it is open and obvious that a moving automobile is a dangerous instrument. However, as neither Georgia law nor this Court can countenance such a result, Defendant's motion is denied.

### DEFENDANT'S MOTION FOR A NEW TRIAL/REMITTITUR

#### A. *Standard*

■ The Court may grant a new trial for reasons which would not support a motion for judgment as a matter of law. *O'Neil v. W.R. Grace and Co.,* 410 F.2d 908, 913 (5th Cir.1969). When considering a motion for a new trial, the Court may reweigh the evidence; it may set aside a verdict because it is against the clear weight of evidence, the damages are excessive or substantial trial errors have occurred. *See National Car Rental Sys. v. Better Monkey Grip Co.,* 511 F.2d 724, 730 (5th Cir.), *cert. denied,* 423 U.S. 894, 96 S.Ct. 193, 46 L.Ed.2d 126 (1975); 28 FEDERAL PROCEDURE, L.Ed. § 62:707 (1984). Granting or denying a new trial is left to the sound discretion of the trial court. *Deas v.*

*Paccar, Inc.,* 775 F.2d 1498 (11th Cir.1985), *cert. denied,* 475 U.S. 1129, 106 S.Ct. 1658, 90 L.Ed.2d 201 (1986). If the Court determines, however, that the excessive verdict was the result of bias, passion or prejudice, the Court cannot order a remittitur—it may only order a new trial. *Faulkner v. Western Elec. Co., Inc.,* 98 F.R.D. 282, 284 (N.D.Ga. 1983). Furthermore, if an improper cause invades the trial a new trial should be granted. *O'Neil,* 410 F.2d at 913–15; *Central Ga. R.R. Co. v. Swindle,* 260 Ga. 685, 398 S.E.2d 365 (1990). On the other hand, if the verdict is not the result of bias, prejudice or passion and the Court decides that remittitur is appropriate, the Court should remit that portion of the excessive verdict which is above the "maximum recovery which the jury could have properly awarded under the evidence and law applicable." *Faulkner,* 98 F.R.D. at 285. *See Goldstein v. Manhattan Indus., Inc.,* 758 F.2d 1435, 1448 (11th Cir.1985), *cert. denied,* 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985).

#### B. *Remittitur & New Trial: General*

■ Defendant raises several issues as grounds for granting a new trial or ordering a remittitur. Most of the grounds attack the underlying facts of the incident or specific aspects of the "expert's" testimony and his accompanying experiment. These issues do not rise to the level necessary for this Court to grant a new trial, nor do most of them merit in-depth analysis. The Court does conclude, however, that although the facts and testimony support a verdict in favor of Plaintiffs, they do not support the amount of the verdict rendered. The verdict is not the result of bias, passion or prejudice, even though Plaintiffs' counsel clearly intended to incite such a reaction. The verdict, however, is excessive.

The excessiveness of the verdict, in large part, results from the improper placing of the burden of proof upon Defendant in the case by Plaintiffs' counsel in his closing argument. The effect of counsel's improper argument upon the verdicts is apparent when considering the great difference in the injuries between the Plaintiffs and the decision of the jury to award each Plaintiff the same amount

in damages. For example, Mrs. Neal substantially recovered from her injuries and returned to work at the time of trial while Mrs. Patty underwent a hip replacement and did not return to work prior to trial and will need additional care in the future. Therefore, the Court concludes that the maximum recovery allowed and supported by the evidence is $250,000 for Mrs. Neal and $750,000 for Mrs. Patty.

## C. *New Trial: Unprofessional Conduct and Closing Argument*

■ The Court has delayed issuing its opinion on the motions *sub judice* and taken much longer in its deliberations on the motion for a new trial than it normally does on other motions of the same nature filed in other similar cases. This delay was caused by the personal nature of the issues raised in the motion—specifically Defendant's allegations concerning Mr. Butler's conduct and his closing argument.

The Court knows that there exist many different methods utilized by the members of the bar in litigating lawsuits and that the method chosen for any particular case depends on the facts and posture of the particular case. Normally, the Court does not expound upon a lawyer's conduct in its written opinions. It saves those comments for the Courtroom and record. Sometimes, however, the situation arises when a lawyer's conduct merits judicial comment even though his/her client technically "wins" the case. This case and Mr. Butler's conduct is just such a situation.

Several times during the pre-trial maneuvering and the actual trial, Plaintiffs' lawyer improperly attempted to incite the jury into a xenophobic rage and switch the burden of proof from the Plaintiffs to Defendant. He tried to blame Toyota for its failure to find a structural defect with the car or an explanation for the crash instead of trying to prove to the jury that a defect existed in the car. He unprofessionally tried to incite sympathy from the jury in the opening argument by deliberately introducing Mrs. Neal's driving record which he knew was improper. When the Court sustained Defendant's proper objection, Mr. Butler continued to argue with the Court causing the Court to inform Mr. Butler again about the impropriety of his argument and conduct. *See* TRIAL TRANSCRIPT: OPENING ARGUMENTS p. 22 ln. 22–p. 23 ln. 15. This entire colloquy and incident was the first in a series of deliberate attempts to appear in the eyes of the jury as the oppressed "little guy" fighting against a Japanese corporation and the Court.

There were many other incidents of inappropriate conduct during the trial. Some Defendant objected to; others went uncontested. The Court sustained most of Defendant's objections and chastised Mr. Butler for his ubiquitous behavior and sophistry. The most blatant disregard for Courtroom behavior and professional responsibility, Plaintiffs' closing argument, however, was not objected to by Defendant either at the time it occurred or immediately thereafter.

Barely skirting the line for professional and acceptable conduct, Mr. Butler used his closing argument to render a "send the message" argument. What astounds the Court the most about this argument is that it is nearly identical in content and meaning to a closing argument specifically questioned by the Georgia Supreme Court as being improper. In *Central of Georgia Railroad Co. v. Swindle*, 260 Ga. 685, 687, 398 S.E.2d 365 (1990), the Supreme Court chastised Plaintiff's counsel in that case, the same Plaintiffs' counsel in this case, for delivering an improper closing argument. In *Swindle*, Plaintiff's counsel apparently utilized his closing argument to whip the jury into a frenzy regarding the railroad's post-incident conduct. He did not concentrate on the cause of the injury or the legitimate damages the plaintiff could collect. Instead, he focused on having the jury "say something about how [the railroad] should treat employees," *Id.* at 687 n. 1, 398 S.E.2d 365 by deliberately couching his argument so as to appeal for punitive damages even though punitive damages were not a legitimate element of damages in that case.

Plaintiffs' counsel conducted himself in a similar manner in this case. Several times in the closing argument Plaintiffs' counsel attempted to inject a "send the message" argument into his closing argument. He implored the jury to render a verdict which

"tell[s] Toyota the truth" about what happened with the accident. Mr. Butler also intimated that the jury should punish Toyota because it did not thoroughly investigate the accident to determine what actually caused the accident. *See* TRIAL TRANSCRIPT: CLOSING ARGUMENTS at p. 2 ln. 16–18; p. 3 ln. 15–19; p.9 ln. 23–24; p.15 ln. 1–4; p. 41 ln. 10–20; p. 44 ln. 15–22; p. 46 ln. 5–9; p. 47 ln. 1–5.[4] Furthermore, Plaintiffs' counsel incredulously blamed Toyota for Toyota's introduction of a new defense theory immediately prior to trial when in reality it was Plaintiffs' last minute theory, which the Court admittedly did allow, which actually caused Toyota to switch gears in midstream. *Id.* at p. 7 ln. 10–12, p. 47 ln. 6–15.[5]

All of these comments and actions were inappropriate and Plaintiffs' counsel knew it at the time he made them. He deliberately attempted to bait Defendant's lawyers into objecting and thereby add more ammunition to his arsenal of alleged illicit activities. In response, Defendant's lawyers weighed the alternatives concerning their opportunity to object and decided not to object. This decision not to object is the pivotal point of Defendant's motion. The Court did not have a problem with granting a new trial due to Plaintiffs' counsel's conduct. The argument and conduct was improbitious. The perplexing aspect of the Motion for a New Trial was Defendant's failure to object during the clos-

ing argument or even immediately after the closing argument. This inaction is what prevents this Court from granting the motion.

■ The standard for granting a new trial based on improper conduct by counsel, including improper closing argument, "is whether the conduct was such as to impair gravely the calm and dispassionate consideration of the case by the jury." *Bankatlantic v. Blythe Eastman Paine Webber, Inc.,* 955 F.2d 1467, 1474 (11th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 966, 122 L.Ed.2d 122 (1993).[6] Generally, a timely objection to the closing argument is necessary to allow the Court the opportunity to cure such a defect and prevent the defendant from "sandbagging" and taking his chances with the verdict. *Oxford Furniture v. Drexel Heritage Furnishings,* 984 F.2d 1118, 1128 (11th Cir.1993). This rule applies even when the argument is found to be inflammatory, prejudicial and improper. *Woods v. Burlington N. R.R. Co.,* 768 F.2d 1287, 1292 (11th Cir.1985), *rev'd on other grounds,* 480 U.S. 1, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987). Even though "[a] contemporaneous objection is the preferable method of alerting the trial court to the error and preserving such errors for review, (citations omitted), ..., 'where the interest of substantial justice is at stake' improper argument may be the basis for a new trial even if no objection has been

---

4. Some examples of Mr. Butler's remarks:

"I want to suggest to you that the way Toyota has handled the defense of this case reflects, I believe, on what it thinks of its responsibility to users and to you." CLOSING TRANSCRIPT at 2 ln. 16–18.

"I submit to you that the evidence in this case has shown that Toyota is not interested in the truth, they made no effort to seek it or find it out, and we're going to ask you at the close of this case to render a verdict that tells them the truth." *Id.* at 3 ln. 15–19.

"Farris, Patricia and Betsye who have literally gone through life's struggles together, and gone through this tragedy together, and what all they have suffered, Toyota wants to dump on Patricia's head [and blame her for the accident]." *Id.* at 15 ln. 1–4.

"Ladies and Gentlemen, when you render your verdict, we'll ask that you not validate the tactics that we have seen in this trial and that you not validate the irresponsibility Toyota has shown you by not even seeking to find out what was wrong with this car." *Id.* at 46 ln. 5–9.

"[D]on't render a verdict that's the result of somebody getting hooked by one of these last minute tackle box defenses, don't render a compromise verdict. Do full justice and don't validate the irresponsibility that Toyota has shown in their reaction to this case." *Id.* at 47 ln. 1–5.

5. Without the Court allowing Plaintiffs to change the focus of this case from a cruise control case to a floor mat case, Defendant would not have needed to find a different defense theory because they were comfortable, as it turned out correctly so, with the contention that nothing was wrong with the cruise control.

6. In a diversity case, the propriety of a closing argument is a procedural question which is governed by federal law, not state law. *Allstate Ins. Co. v. James,* 845 F.2d 315, 318 (11th Cir.1988); *Westbrook v. General Tire & Rubber Co.,* 754 F.2d 1233, 1239–40 (5th Cir.1985); *Brownlee v. United Fidelity Life Ins. Co.,* 117 F.R.D. 383, 385 (S.D.Miss.1987), *aff'd,* 854 F.2d 1319 (5th Cir. 1988).

raised." *McWhorter v. City of Birmingham,* 906 F.2d 674, 677 (11th Cir.1990) (citations omitted). *See Gonzalez v. Volvo of America Corp.,* 734 F.2d 1221, 1225 (7th Cir.1984) (unobjected to closing argument deemed improper, case reversed).

Defendant argues that if it had objected, it would have played into Mr. Butler's hand by showing the jury that Toyota did not want the truth to come out in this trial. That maybe true; but, it also demonstrates that Defendant made the tactical choice not to object and thereby prevent the jury from attaching a bias to Defendant's behavior. It also prevented this Court from admonishing Plaintiffs' counsel for his actions and giving a curative instruction to the jury to disregard those improper remarks. The Court realizes that Defendant may have been caught in a perfectly designed Catch–22 manufactured by Mr. Butler: object and risk raising the ire of the jury or not object and let Mr. Butler use his powers of persuasion to manipulate the jury into forgetting the facts and trying the Defendant's post-accident conduct instead of the incident which gave rise to the lawsuit. The more prudent course of action, however, would have been for Defendant to object at the first mention of improper argument and again raise the objection after Mr. Butler finished his closing if he continued utilizing his improper remarks, as he did here. This action would have preserved the error for the record and also given Defendant a stronger basis for its motion. On the record currently before the Court, however, even though the Court finds Mr. Butler's behavior inappropriate and unprofessional, the Court cannot say that the interests of substantial justice would be better served by granting the motion for a new trial.

Accordingly, the Court **DENIES** Plaintiff's Motion to File Supplemental Brief, **DENIES** Defendant's Renewed Motion for Judgment as a Matter of Law and **GRANTS** in part **DENIES** in part Defendant's Motion for a New Trial/Remittitur. The Court **ORDERS** a remittitur upon both Farris Patty's and Patricia Neal's claim against Defendant reducing the judgment for Mrs. Neal in Civil Action # 91–cv–63 to $250,000 and for Mrs. Patty in Civil Action # 91–cv–62 to $750,000

respectively with interest on both judgments, as remitted, as provided by law from the date of the original judgment in this case; and, should both Plaintiffs fail to file a written consent to such remittitur with the Clerk of this Court within ten (10) days from the filing of this Order, then Defendant is granted a new trial against both Plaintiffs.

IT IS SO ORDERED.