59079. LAKEVIEW MEMORY GARDENS, INC. v. NATIONAL BANK & TRUST COMPANY OF COLUMBUS.

SMITH, Judge.

The trial court directed a verdict for appellee National Bank and Trust Co. of Columbus (Bank) on its breach of contract claim against appellant Lakeview Memory Gardens (Lakeview). We affirm with direction.

Lakeview regularly sold "pre-need burial services" to interested parties under the terms of standard installment sales contracts. On January 24, 1974, Lakeview entered into a "Discount Agreement" with the Bank whereby the Bank agreed, subject to specified conditions, to purchase a certain number of Lakeview's installment sales contracts. As a part of the agreement, the Bank was granted a right of full recourse against Lakeview on each contract sold in the event that any of the obligors under the contracts defaulted on their scheduled payments. In addition, Lakeview agreed to deposit 25% of the net amount of each contract into a reserve account as security for the Bank against defaults.

Shortly after the parties entered into the Discount Agreement, defaults began occurring on 21 of the contracts which the Bank had purchased from Lakeview. To satisfy these unpaid obligations the Bank began to withdraw from the reserve account sums equivalent to the unpaid balances due under the recourse provisions of the Discount Agreement.

The Discount Agreement provides that "[t]he bank will assist Evergreen [not a party to this suit] and Lakeview in the collection of delinquent accounts until they become 90 days delinquent, at which time they agree to pay the contract in full *with a maximum of 25% of the net pay-off deducted from the reserve account."* (Emphasis supplied.) Lakeview contends that the Bank breached the terms of the Discount Agreement by deducting more than 25% of the net pay-off from the reserve account. The Bank asserts that it was

permitted to vary from the deduction limitation contained in the original agreement by a subsequent oral modification of the agreement.

At trial, two officers of the Bank testified that the alleged oral modification was agreed upon during various conversations which the officers had had with Larry Terrell, former general manager of Lakeview. In rebuttal, Lakeview introduced testimony of its former bookkeeper and current vice-president, Martha Piland. Mrs. Piland testified that Lakeview's former vice-president, Alan Coclereece, instructed her not to allow the Bank to deduct sums from the reserve account which were in excess of the 25% ceiling set out in the Discount Agreement because "[t]hat was what was owed . . . and he was going to pay it that way."

After the close of Mrs. Piland's testimony, the Bank moved for a directed verdict. The trial court determined that Lakeview had presented no probative evidence disputing the existence of the oral modification and directed a verdict in the Bank's favor.

1. In its first enumeration of error, appellant Lakeview contends that, due to the exclusion of Mrs. Piland's testimony, appellant was denied the opportunity "of developing to any extent the alleged existing relationship between herself and the cemetery and to explain her directions, authority and delegated powers as to the factual circumstances of this controversy." Whether this contention has any merit cannot be determined on the basis of this record. Appellant failed to make an offer of proof. *Williams v. Tribble,* 140 Ga. App. 390 (231 SE2d 86) (1976); *Anderson v. Jarriel,* 224 Ga. 495 (162 SE2d 322) (1968).

2. Appellant Lakeview also contends the trial court erred in directing a verdict for appellee because testimony elicited from Mrs. Piland establishes a question of fact as to the existence of the oral modification. On direct examination she testified that ". . . they began taking money out of the reserve against the cemetery's request." Appellee objected to this testimony on hearsay grounds. The trial court sustained the objection and instructed the jury to disregard the testimony. On cross-examination, Mrs. Piland testified as follows: "Q. What did you tell Mr. Peterson [of appellee bank] when he said he was going to take the payments out of the reserve account? A. I told him that Mr. Coclereece had advised me — Q. Now I didn't ask you what Mr. Coclereece said. I said what did you tell Mr. Peterson? A. Sir, to answer the question I would have to tell you what he said. Q. All right. What did you tell Mr. Peterson? A. Mr. Coclereece told me the money was not to be bothered. You want me to continue? Q. Is that the end of what you told Mr. Peterson? A. No, it's not. It's what Mr. Coclereece told me to do. Q. Have you completed

your answer as far as what you told Mr. Peterson? A. No, sir, I told him why, what Mr. Coclereece had told me. Q. All right. Have you completed your answer? A. No, sir. Q. Tell the jury everything you told Mr. Peterson. A. Well, you told me not to say what Mr. Coclereece said. He said the money was not to be bothered. If the cemetery owed the bank any money, any money they owed them, the portion that was given the bank, the front money minus the payments. That was what was owed at the time we got the money and he was going to pay it that way." The trial court refused to consider this testimony on the motion for directed verdict, ruling that, for purposes of establishing the non-existence of the modification, the testimony was hearsay.

Appellant argues the testimony should have been considered by the trial court under Code § 38-302 "to explain conduct and ascertain motives." Whatever the merits of this argument, it is nonetheless clear that the testimony, insofar as it related what Mr. Coclereece had said to Mrs. Piland about the arrangement with appellee bank, was hearsay and of no probative value. *Maryfield Plantation v. Harris Gin Co.,* 116 Ga. App. 744 (3) (159 SE2d 125) (1967). *Bruce v. Brown,* 34 Ga. App. 240, 241 (129 SE 118) (1925). United States v. Crawford, 443 F2d 611, 616 (5th Cir. 1971). Mrs. Piland's testimony was insufficient to raise a question of fact as to the existence of the oral modification. Under the uncontroverted evidence, the parties had agreed to a modification of the Discount Agreement.

3. "A directed verdict is authorized where there is no conflict in the evidence and the verdict is demanded. *State Farm &c. Ins. Co. v. Snyder,* 125 Ga. App. 352 (187 SE2d 878). The mere existence of conflicts in the evidence does not render the direction of a verdict erroneous if it was demanded either from proof or lack of proof on the controlling issue. *Stepp v. Stepp,* 195 Ga. 595 (2) (25 SE2d 6); *Lingo v. Kirby,* 142 Ga. App. 278, 279 (236 SE2d 26). That is the situation in the present case." *Slack v. Moorhead,* 152 Ga. App. 68, 71-72 (262 SE2d 186) (1979). The trial court's direction of a verdict was not erroneous for any of the reasons asserted in this appeal, and the evidence demanded a judgment in favor of appellee. Appellant's third enumeration, asserting that "the trial court erred in directing a verdict in behalf of appellee . . .," is without merit.

4. In its fourth enumeration of error, Lakeview contends that the trial court's computation of attorney fees was erroneous. We agree.

The discount agreement states that ". . . Lakeview will endorse all contracts *with recourse.*" All of the installment contracts contain the following provision: ". . . If the indebtedness due under the terms of this contract is collected by or through an attorney at law, debtor

shall be liable for reasonable attorneys' fees *not to exceed 15%."* (Emphasis supplied.) The parties assume this provision governs Lakeview's liability for attorney fees and we need not go beyond this assumption in the instant appeal.

The attorney fees provision placed a 15% limit on attorney fees. It does not, however, provide for "attorney's fees in some specific per cent . . ." Code § 20-506(a). Attorney fees must therefore be determined in accordance with Code § 20-506(b), which provides: "If such note or other evidence of indebtedness provides for the payment of reasonable attorney's fees, without specifying any specific per cent., such provision shall be construed to mean 15 per cent. of the first $500 principal and interest owing on such note or indebtedness, and 10 per cent. of the amount of principal and interest owing thereon in excess of $500."

The trial court's computation of attorney fees was based upon a flat rate of 15 per cent. Under Code § 20-506(b) this was erroneous. We therefore remand the case with direction that the trial court award attorney fees in accordance with Code § 20-506(b). See *Roddy Sturdivant Enterprises v. National Advertising Co.,* 145 Ga. App. 706 (244 SE2d 648) (1978).

*Judgment affirmed with direction. McMurray, P. J., and Banke, J., concur.*

Argued January 15, 1980 — Decided April 29, 1980 — Rehearing denied July 31, 1980 — 

*Allen J. Hammer,* for appellant.
*Richard Y. Bradley,* for appellee.