64491. STODGHILL v. FIAT-ALLIS CONSTRUCTION MACHINERY, INC. et al.

BANKE, Judge.

While the appellant was using a bulldozer manufactured by the appellees to clear felled trees from a construction site, a tree jumped over the bulldozer blade and struck him in the chest. In this products liability action, he contends that the machine was defective in that it had no protective metal cage surrounding the driver's seat and that this alleged defect was the proximate cause of his injuries. This appeal is from the grant of summary judgment to the appellees based on the doctrine of assumption of risk.

The appellant was in the employ of Woodward Construction Company at the time the accident occurred and was obeying instructions to use the bulldozer for the particular purpose in question. The appellant testified that he was an experienced bulldozer operator, that he knew the absence of a protective cage exposed him to injury from falling trees and limbs, and that to avoid

injury in such a situation he expected he would jump out of the way. However, he stated that he had never anticipated that a tree might spring over the blade as did the tree which injured him. He offered expert testimony to support his contention that the absence of a protective cage on a bulldozer constituted a design defect. *Held:*

Code Ann. § 105-106 provides that the manufacturer of any personal property sold as new shall be liable to any natural person who uses the product "and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended and its condition when sold is the proximate cause of the injury sustained." In *Center Chem. Co. v. Parzini,* 234 Ga. 868, 870 (4) (218 SE2d 580) (1975), the Georgia Supreme Court held that the phrase, "not merchantable and reasonably suited to the use intended," as used in this statute, means "defective." *Id.* at 869. The court further held that the statute "does not attach the condition that the defective product must be 'unreasonably dangerous' which definition is included in the classic definition of strict liability." *Id.* at 870. Accord *Beam v. Omark Industries, Inc.,* 143 Ga. App. 142, 144 (a) (237 SE2d 607) (1977). To this extent, the standard of liability created by the statute differs from that set forth in the Restatement of the Law, Torts, 2d, § 402A (1), p. 347. See Eldridge, Products Liability, § 5-6, p. 127 (1976).

It has been held that the doctrine of contributory negligence does not apply in products liability cases, whereas the doctrine of assumption of risk does. See *Parzini v. Center Chem. Co.,* 136 Ga. App. 396, 399-400 (221 SE2d 475) (1975); 63 AmJur2d Products Liability, § 150, p. 154. However, the two concepts are related in that one who assumes the risk of a known danger may often be said to have exhibited less than reasonable care for his own safety. The Restatement distinguishes between the two concepts as follows: "Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence. On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense . . . in . . . cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery." Restatement of the Law, Torts, 2d, § 402A, comment n, p. 356. See also Shields v. Morton Chem. Co., 95 Idaho 674 (518 P2d 857, 860) (1974); 63 AmJur2d Products Liability, § 150, p. 155. This definition of assumption of risk has been applied in

products liability cases by the Georgia Supreme Court. See *Center Chem. Co. v. Parzini,* supra, 234 Ga. at 870 (5), 871, and *Ford Motor Co. v. Lee,* 237 Ga. 554 (229 SE2d 379) (1976). As in other cases involving negligence, contributory negligence, and assumption of risk, the determination of reasonableness will ordinarily be for the jury rather than for the trial judge. See, e.g., *Beam v. Omark Ind., Inc.,* supra, at 145.

In the case before us now, the appellant was obviously aware that the bulldozer he was operating had no protective cage and that the absence of this safety device exposed him to the danger of being injured by anything which might strike the driver's compartment. However, he contends that because he was acting under orders from his employer, his conduct cannot be characterized as unreasonable as a matter of law. While we are certainly inclined to agree with this contention (see *Kitchens v. Winter Co. Bldrs., Inc.,* 161 Ga. App. 701, 703 (289 SE2d 807) (1982)), we do not view the reasonableness of the appellant's conduct as the dispositive issue in this case. Rather, our concern is with the threshold issue of whether the absence of the protective cage can properly be considered a defective condition so as to establish a breach of duty on the part of the appellees in the first place.

Conceivably, any manufactured good is capable of inflicting injury; and, indeed, the use of certain products, such as, for example, firearms, powersaws, and perhaps motorcycles, may be considered intrinsically dangerous. Recognizing this fact, we held in *Hunt v. Harley-Davidson Motor Co.,* 147 Ga. App. 44 (248 SE2d 15) (1978), that a manufacturer has no duty to warn of obvious common dangers connected with the use of a product. This rule has been followed repeatedly in federal diversity actions governed by Georgia law. See Colson v. Allied Prod. Corp., 640 F2d 5 (5th Cir. 1981), Wansor v. George Hantscho Co., 595 F2d 218 (5th Cir. 1979); Stokes v. Peyton's, Inc., 526 F2d 372 (5th Cir. 1976). Although the "patent danger rule" has its roots in a New York decision involving negligence law, Campo v. Scofield, 301 NY 468 (95 NE2d 802) (1950), and New York later discarded it in Micallef v. Miehle Co. &c., 39 NY2d 376 (348 NE2d 571) (1976), it is still viable in this state (see Wansor v. George Hantscho Co., supra, at 220, n. 7), as it is in many others. See Anno., Products Liability: Duty of Manufacturer to Equip Product With Safety Device to Protect Against Patent or Obvious Danger, 95 ALR3d 1066. See also 63 AmJur2d Products Liability § 51, p. 60. Thus, we reaffirm our prior holdings that " ' "If a manufacturer does everything necessary to make the machine function properly for the purpose for which it is designed, if the machine is without any latent defect, and if its functioning creates no danger or peril that is not

known to the·user, then the manufacturer has satisfied the law's demands. We have not yet reached the state where a manufacturer is under the duty of making a machine accident proof or foolproof . . . [H]e is under no duty to guard against injury from a patent peril or from a source manifestly dangerous." ' " *Poppell v. Waters,* 126 Ga. App. 385, 387 (190 SE2d 815) (1972).[1]

Because the failure of the appellees in this case to install a protective cage over the driver's seat of the bulldozer was an obvious characteristic of the machine which created no hidden peril and did not prevent the machine from functioning properly for the purpose for which it was designed, it cannot reasonably be considered a design or manufacturing defect under Georgia law. It follows that the trial court did not err in granting the motion for summary judgment.

*Judgment affirmed. McMurray, P. J., and Birdsong, J., concur.*

DECIDED SEPTEMBER 14, 1982 —
REHEARING DENIED OCTOBER 8, 1982 — ▓▓▓▓▓▓▓

*William C. Lanham, Clark H. McGehee,* for appellant.
*Samuel Pierce,* for appellees.

---

[1] This language was taken from Campo v. Scofield, supra, at 472. Although *Poppell* was decided prior to the enactment of Code Ann. § 105-106 and was consequently based on negligence principles (as was Campo v. Scofield, supra), the court in *Poppell* specifically indicated that the ruling would apply "even under 'strict liability' . . ." *Id.* at 388 (3). The quoted language was again repeated in its entirety in *Hunt v. Harley-Davidson,* supra, at p. 46.