74446. FORTNER v. W. C. CAYNE & COMPANY, INC.
(360 SE2d 920)

CARLEY, Judge.

While working at a construction site, appellant-plaintiff fell from a scaffolding which had been mounted on casters for mobility. The casters had been designed so that they could be securely attached to the scaffolding posts by the use of pins, wire, or a number of other items. However, the scaffolding from which appellant fell had not been mounted on casters which had been secured to the posts of the scaffolding. The scaffolding had been assembled at the construction site by appellant's co-workers who had merely slid the casters into the bottom of the scaffolding posts without securely attaching them thereto. At the time of his fall, appellant was atop the scaffolding as his co-workers were pushing it across the floor. The scaffolding came to an unexpected and abrupt halt upon encountering some unidentified obstruction in the path of its forward progress across the floor. The momentum was sufficient to cause one end of the scaffolding to

leave the floor and, as the result, the unattached casters at that end fell out of the scaffolding posts into which appellant's co-workers had slid them. When the scaffolding righted itself, the end from which the casters had fallen was now some 10 inches shorter than the opposite end which still had the casters in place. This discrepancy in the height of the respective ends of the scaffolding caused it to fall, taking appellant with it.

Appellant sued appellee-defendant in its capacity as the lessor of the scaffolding and the casters. Appellant alleged that the equipment had been leased to his employer by appellee, that the leased equipment was defective, and that his injuries were the proximate result of the defective equipment. Appellee answered, denying the material allegations of appellant's complaint. The case came on for jury trial. At that trial, appellant attempted to prove his allegation that the equipment was defective by introducing evidence that appellee had failed to provide any pins for the attachment of the casters to the scaffolding posts and had failed to provide a warning that the casters should be secured to the posts by some means. Appellee's motions for a directed verdict were denied and the case was submitted to the jury. However, a mistrial was declared when the jury could not reach a verdict. Appellee then moved for judgment notwithstanding the mistrial. The trial court granted appellee's motion and appellant appeals from the resulting judgment which was entered in favor of appellee.

1. "A motion for a judgment notwithstanding a mistrial is analogous to a motion for a directed verdict or motion for judgment notwithstanding the verdict in that the same can be sustained only where '(t)here is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom shall demand a particular verdict.' [Cit.]" *Gordon v. Carter*, 126 Ga. App. 343, 344 (190 SE2d 570) (1972). Appellant enumerates the grant of appellee's motion as error, asserting that, under the evidence, numerous factual conflicts existed for jury resolution and that the trial court erred by purporting to make "findings" in its order which resolved those conflicts.

A review of the transcript does disclose that some of the "findings" made by the trial court in its order would appear to represent its own resolution of certain disputed factual issues. However, " '[t]he mere existence of conflicts in the evidence does not render [the grant of judgment notwithstanding mistrial] erroneous if it was demanded either from proof or lack of proof on *the controlling issue*. [Cits.]' " (Emphasis supplied.) *Lakeview Memory Gardens v. Nat. Bank & Trust Co.*, 155 Ga. App. 478, 480 (3) (271 SE2d 219) (1980). The "controlling issue" in this case is whether appellee, as lessor of the equipment, breached its duty "[t]o warrant . . . that the thing bailed is free from any secret fault rendering it unfit for the purposes for

which it is hired." OCGA § 44-12-63 (3). Under OCGA § 44-12-63 (3), "[o]ne who supplies an appliance for such use by others that it is obvious to him that any defect will be likely to result in injury to those using it is liable to any person who, using the appliance properly for the purpose for which it is supplied, and without notice or warning of its defective condition, is injured thereby. This principle of law has been applied to defective scaffolds for workmen to work upon. [Cits.]" *Queen v. Patent Scaffolding Co.*, 46 Ga. App. 364, 370 (2) (167 SE 789) (1933). Accordingly, the burden in this case was upon appellant to produce evidence which would authorize a finding that appellee had breached its duty as a lessor by leasing scaffolding which was defective. If there was a lack of proof as to this controlling issue, then the grant of appellee's motion was authorized notwithstanding a conflict in the evidence as to any other issue.

2. It is undisputed that appellee had not supplied attachment pins in connection with its lease of the equipment. However, it is also undisputed that appellee itself had not been supplied with such attachment devices. The manufacturer of the casters did not supply pins with its product. Prior to the adoption of "strict liability," a lessor's duty with regard to the lease of defective products under OCGA § 44-12-63 (3) was analogized to a manufacturer's duty with regard to the sale of defective products, that duty being defined by the traditional standards of negligence. See *Queen v. Patent Scaffolding Co.*, supra. Under current law, a manufacturer may now be held liable for injuries caused by his defective product even in the absence of negligence. It would necessarily follow that a lessor's liability with regard to the lease of defective products under OCGA § 44-12-63 (3) is not as great as a manufacturer's liability under existing OCGA § 51-1-11 (b). Accordingly, if the evidence in this case would not authorize a finding that the casters without attachment devices were "defective" products so as to permit a recovery against the manufacturer under OCGA § 51-1-11 (b), it clearly would not authorize a finding that they were "defective" products so as to permit a recovery under OCGA § 44-12-63 (3) against appellee as the lessor.

Under the evidence, the absence of attachment devices neither rendered the casters unusable nor rendered the scaffolding inherently unsafe for any use. Compare *Queen v. Patent Scaffolding Co.*, supra at 374 (4). There is no dispute that the scaffolding could be safely rolled on a level surface even if it was mounted on casters which had not actually been attached to the posts. A scaffolding which had been mounted on casters that were not securely attached became dangerous only when it was rolled across a surface which was not level. This danger that any unattached casters might disengage if the scaffolding was rolled across an uneven surface was, however, an obvious one and was actually recognized by one of appellant's co-workers who had as-

sembled the scaffolding. Compare *Queen v. Patent Scaffolding Co.*, supra at 369 (2). This co-worker testified to the need for secure attachment of the casters "just in case you run over a pothole or something like that so the wheels wouldn't fall off." Neither a manufacturer nor a lessor " ' "is under the duty of making a machine accident proof or foolproof . . . (He) is under no duty to guard against injury from a patent peril or from a source manifestly dangerous." ' [Cit.] Nor is there a duty on the manufacturer or [lessor] to warn of obvious common dangers connected with the use of a product. [Cits.]" *Poppell v. Waters*, 126 Ga. App. 385, 387-388 (1) (190 SE2d 815) (1972). See also *Hunt v. Harley-Davidson Motor Co.*, 147 Ga. App. 44, 45 (2) (248 SE2d 15) (1978); *Stodghill v. Fiat-Allis Constr. Machinery*, 163 Ga. App. 811 (295 SE2d 183) (1982).

Appellee's failure to have provided any pins or other attachment devices to guard against the obvious danger of disengagement of the casters on an uneven surface was not a "secret." The equipment had been delivered by appellee to the construction site in an unassembled state. That no attachment devices which would guard against the disengagement of the casters had been provided was apparent to and was actually noted by appellant's co-workers who had assembled the scaffolding. "No warranty can be implied that [casters] obviously not equipped with [caster pins are] intended for safe use [on an uneven surface]. [Cit.]" *Poppell v. Waters*, supra at 388 (2). Compare *Queen v. Patent Scaffolding Co.*, supra at 369 (2), wherein the evidence "tended to show that the rail was painted and that it took a close scrutiny or inspection to ascertain [its alleged defective condition]."

Moreover, the casters that were supplied by appellee were capable of being securely attached to the scaffolding. It is undisputed that they were designed to accommodate a secure attachment to the scaffolding posts by the employment of items otherwise generally available at a construction site, such as bolts or wire. This design capability was also apparent to and actually noted by appellant's co-workers. The evidence showed that the use of such items to secure casters to the scaffolding that was mounted upon them was "not an uncommon" practice and at least one of appellant's co-workers had himself previously attached casters by using bolts or wire found at a construction site. However, in this particular instance appellant's co-workers had sought neither bolts nor wire at the construction site and had not attached the casters to the scaffolding because their supervisor had not directed that it be done and because the floor where the scaffolding was to be rolled was considered to be "a flat surface." Although the floor may have been flat, it is undisputed that there was debris on it. With full knowledge of the existence of the debris on the floor and of the lack of any secure attachment of the casters to the scaffolding posts, appellant's co-workers nevertheless undertook to push the scaf-

folding across the floor while allowing appellant to remain atop it.

On this evidence, the scaffolding mounted on unsecured casters was safe for limited use on a level surface and was also readily adaptable for safe use on an uneven surface as against the obvious danger of disengagement of the casters. A product is not rendered "defective" by the patent absence of a specific safety device which would serve to guard against a common danger connected with the limited use of a product, which danger the ultimate user can himself recognize and otherwise guard against. See generally *Hunt v. Harley-Davidson Motor Co.*, supra; *Stodghill v. Fiat-Allis Constr. Machinery*, supra; *Rhodes v. R. G. Indus.*, 173 Ga. App. 51 (325 SE2d 465) (1984). Under the evidence of record in this case, appellant's injuries are attributable to the acts of his co-workers who assembled the scaffolding and who, having initially failed to employ any means to activate the design of the casters for achieving a secure attachment to the posts, then pushed it across an uneven surface with appellant atop it. The evidence thus showing no actionable breach of appellee's duty under OCGA § 44-12-63 (3), the trial court did not err in granting appellee's motion for judgment notwithstanding mistrial.

*Judgment affirmed. Banke, P. J., and Benham, J., concur.*

DECIDED SEPTEMBER 11, 1987.

*Christopher G. Nicholson*, for appellant.
*W. Allen Evans*, for appellee.