**Lois Elaine WILSON,**
**Plaintiff–Appellant,**

v.

**BICYCLE SOUTH, INC., a Georgia Corporation, et al., Defendants–Appellees.**

No. 89–8522.

United States Court of Appeals,
Eleventh Circuit.

Oct. 30, 1990.

**1504**

Robert H. Benfield, Jr., Middleton & Anderson, Atlanta, Ga., for Lois Elaine Wilson.

Stephen F. Dermer, Smith Gambrell & Russell, Atlanta, Ga., for Trek Bicycle.

Jonathan Mark Engram, Swift Currie McGhee & Hiers, Atlanta, Ga., for Bicycle South.

Tommy T. Holland, Christopher N. Shuman, Carter & Ansley, Atlanta, Ga., for Opportunities, Inc.

Palmer H. Ansley, David A. Sapp, Long Weinberg Ansley & Wheeler, Atlanta, Ga., for Skid Lid.

Before CLARK, Circuit Judge, MORGAN and HILL[*], Senior Circuit Judges.

HILL, Senior Circuit Judge:

## I. INTRODUCTION

This appeal concerns a products liability action based upon alleged breach of warranty, strict liability, and negligence resulting in injuries to Lois Elaine Wilson ("Wilson"), appellant. Wilson incurred head injuries during an accident in Georgia while on a cross-country bicycle trip. The jury returned a verdict in favor of Wilson and against one defendant on a bicycle helmet defect claim, and against Wilson and in favor of three defendants on a bicycle wheel defect claim. The district court granted a judgment notwithstanding the verdict on the helmet claim. Plaintiff ap-

[*] *See*, Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

peals this grant and also alleges several other errors by the district court concerning the bicycle wheel claim.

### A. *Issues Presented*

Appellant raises four distinct categories of issues on appeal. First, appellant claims that the district court erred in granting appellee Skid Lid Manufacturing Company's ("Skid Lid") motion for a judgment notwithstanding the verdict. Second, appellant contends that the district court improperly commented on the evidence. Third, she asserts that the district court committed reversible error by refusing to admit "similar accident" evidence. Finally, appellant maintains that the district court erred in charging the jury on the defense of "legal accident."

We hold that the trial court did not err in granting the JNOV. Nor do the trial judge's comments on the evidence provide cause for reversal. Similarly, we find appellant's third and fourth contentions to be meritless.

### B. *Factual and Procedural History*

On January 6, 1983, appellant purchased a Trek 614 touring bicycle. Trek Bicycle Corporation ("Trek") manufactured the bicycle, Opportunities, Incorporated ("Opportunities") assembled the bike's rear wheel according to Trek's specifications, and Bicycle South, Inc. ("Bicycle South") sold the bike to appellant. The latter three parties will be referred to collectively as "the bicycle defendants." On February 9, 1983, appellant also purchased, from a company not a party to this lawsuit, a bicycle helmet manufactured by Skid Lid. Rather than purchase a helmet covering her entire head, appellant chose one that only covered the top half of her head, coming down to about the top of her ears.

Wilson purchased the bike and helmet for a cross-country bicycling trip from Florida to California. Eight days into her trip, on April 23, 1983, Wilson sustained head injuries in a fall from the bicycle while she was riding downhill on a two-lane Georgia highway between Plains and Americus,

Georgia. Between January 6 and April 23, Wilson had ridden approximately 1200 to 1600 miles on the bicycle.

The cause of appellant's fall is disputed by the parties. Appellant maintains that the rear wheel collapsed into a saddle-like shape as a result of an improper manufacturing process and a failure to retrue the spokes of the wheel after the rim was assembled. Under this theory, the tension in the wheel, which was not released after the rim was formed and the wheel assembled, caused the spokes to loosen after use and led to the collapse. The bicycle defendants, on the other hand, maintain that the fall did not result from the wheel collapse, but that the wheel collapsed as a result of appellant's fall from the bike.[1]

The point of initial impact between Ms. Wilson's head and the pavement was behind her left ear and below the edge of the helmet. As a result of the impact, she claims that she sustained three injuries. The first two, a basilar skull fracture and occipital scalp laceration, were not particularly serious and do not comprise the more serious damage. The more serious injury was a "contre-coup" (an injury to the opposite side of the head from the point of initial impact) brain contusion.

Alleging defects in the bicycle wheel and helmet, Ms. Wilson filed a complaint in this products liability action based upon breach of warranty, strict liability, and negligence. During the trial, appellant attempted to introduce evidence of a prior bicycle wheel defect claim brought by another party against Trek, Opportunities, and another bicycle store, alleging that the incidents were substantially similar. The trial court excluded the earlier incident.

At the beginning of his charge, the trial judge explained to the jury:

> As a federal judge, I have the right, power, and duty to comment on the facts, to express my opinion with respect thereto ... but remember, in the last analysis, every factual issue in this case must be decided by you, by you alone, and anything that anybody else in this room says

1. The actual cause of the fall does not affect the issues currently before this Court.

about the facts is a mere opinion, not binding upon you.

Subsequently, referring to witness testimony, the judge again emphasized that "as sole judges of the facts, you, the jury, and you only, must determine which of the witnesses you believe and what portion of their testimony you accept and what weight you attach to it." Prior to analyzing and giving his opinion of the evidence that Ms. Wilson presented,[2] the judge again cautioned the jury that "you, as jurors, are at liberty to disregard each, every, and all comments of the court in arriving at your own findings of the facts." At the conclusion of his remarks, the trial judge further emphasized:

> Let me stress as strongly as I can that you, the jury, are the sole and only judges of the facts. The past several minutes I have been giving you my opinion with respect to matters committed solely to your decision, not mine. My comments are and can only be expressions of a personal opinion and are not binding on you in any way, shape, or form. Remember that in considering every issue in this case, including those to which I have just alluded, you must resort to your own recollection of the evidence, not that which I have just stated.... You must, in the diligent performance of your duty, rely on your recollection of all the evidence and not merely that which I may have called to your attention and emphasized.

On April 13, 1989, the jury returned a verdict in favor of appellant against appellee Skid Lid in the amount of $265,000 on the helmet claim. On the bicycle wheel claim, the jury returned a verdict against appellant and in favor of the bicycle defendants.

On April 21, 1989, appellee Skid Lid moved for a judgment notwithstanding the verdict, and on May 24 the trial court entered an Order granting the motion. The court did so because it found that Ms. Wilson had "assumed the risk of injury as to parts of her body patently not covered by the helmet."

## II. DISCUSSION

### A. The Helmet & the Judgment Notwithstanding the Verdict

We review the district court's grant of a JNOV under the same standard as the district court used in determining whether to grant a JNOV. As we stated in *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1558 (11th Cir.1988):

> *All* of the evidence presented at trial must be considered "in the light and with all reasonable inferences most favorable to the party opposed to the motion." A motion for judgment n.o.v. should be granted only where "reasonable [people] could not arrive at a contrary verdict...." Where substantial conflicting evidence is presented such that reasonable people "in the exercise of impartial judgment might reach different conclusion, [sic]" the motion should be denied. (citations omitted)

In applying this standard for the sufficiency of evidence, we also look to Georgia substantive law to determine whether Skid Lid deserved judgment as a matter of law. *See Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Salter v. Westra*, 904 F.2d 1517, 1524 (11th Cir.1990).

Defendants in products liability actions have asserted two similar defenses in attempting to steer clear of liability, assumption of the risk and the "open and obvious rule."[3] While the trial judge in this case based the JNOV on assumption of the risk, we also address the open and obvious rule because affirmance of the JNOV is proper even if based on a different rationale. *See Paisey v. Vitale*, 807 F.2d 889, 890 (11th Cir.1986).

---

**2.** The trial judge focused especially on items of derogatory information with respect to appellant's expert, Mr. James Green.

**3.** This rule is also known as the "patent danger rule" and has its roots in a New York decision involving negligence law, *Campo v. Scofield*, 301 N.Y. 468, 95 N.E.2d 802 (1950). New York later abandoned the rule in *Micallef v. Miehle Co.*, 39 N.Y.2d 376, 384 N.Y.S.2d 115, 348 N.E.2d 571 (1976).

█ We need not reach the assumption of the risk issue if the helmet was not defective because Skid Lid would have breached no duty to Ms. Wilson. We thus initially address the open and obvious rule. The open and obvious rule states that a product is not defective if the peril from which injury could result is patent or obvious to the user. *Stodghill v. Fiat–Allis Construction Machinery, Inc.*, 163 Ga. App. 811, 295 S.E.2d 183, 185 (1982). This determination regarding the peril is made on the basis of an *objective* view of the product. *Weatherby v. Honda Motor Co., Ltd.*, 195 Ga.App. 169, 393 S.E.2d 64, 66 (1990) (certiorari denied June 21, 1990). In assessing what is obvious, it must be remembered that, contrary to the belief of some, the American public is not child-like. *Stodghill* is instructive in this respect. In *Stodghill*, the plaintiff was using a bulldozer manufactured by the defendants to clear felled trees from a construction site when a tree jumped over the bulldozer blade and struck him in the chest. The plaintiff claimed that the machine was defective because it had no protective metal cage surrounding the driver's seat. The Georgia Court of Appeals recognized that the plaintiff "was obviously aware that the bulldozer he was operating had no protective cage and that the absence of this safety device exposed him to the danger of being injured by anything which might strike the driver's compartment." *Id.* 295 S.E.2d at 184. The court concluded that

"[b]ecause the failure of the appellees in this case to install a protective cage over the driver's seat of the bulldozer was an *obvious characteristic of the machine* which created no hidden peril and did not prevent the machine from functioning properly for the purpose for which it was designed, it cannot reasonably be con-

sidered a design or manufacturing defect under Georgia law."

*Id.* at 185.

█ Similar to the absence of the protective cage on the bulldozer, it is or should be apparent to one who purchases an article of clothing or protective gear that the article can only protect that portion of the body which is covered. A person purchasing a bullet proof vest cannot realistically claim that he expected it to protect him from a bullet in the leg. Likewise, one purchasing a sleeveless t-shirt cannot protest that it should have protected him from a scrape on the arm. In the case at bar, rather than selecting a helmet covering her entire head, appellant elected to purchase a helmet that she knew covered only the top half of her head. She did know, or certainly should have known, that the helmet with less extensive coverage would not protect her from an impact to an area not covered by the helmet. Unlike a full helmet, the half-helmet was not designed to protect against impacts anywhere on the head. The extent of coverage was "an obvious characteristic of the [helmet] that created no hidden peril and did not prevent the [helmet] from functioning properly for the purpose for which it was designed." *Stodghill*, 295 S.E.2d at 185. We thus find, as a matter of law, that the helmet was not defective under Georgia law.[4]

█ Even if the failure to cover the full head were a defect, it is still beyond peradventure that appellant assumed the risk of injury to the parts of her body patently not covered by the helmet. Under Georgia law, " '[i]f the user or consumer discovers the defect and is aware of the danger, but nevertheless proceeds unreasonably to make use of the product, he is

---

4. We note that Georgia courts have been careful to avoid treating the American public as children where a peril is obvious or patent and the product thus not defective. In *Weatherby,* the five-year old plaintiff had been a passenger on an off-road motorcycle that did not have its gas cap in place. During the ride over uneven terrain, gasoline splashed from the open tank and ignited, causing burns to the plaintiff. The court found that an open fuel tank "surely suggests the possibility of spillage," that because the

fuel tank is located above the engine "gravity can be anticipated to bring the spilled fuel in contact with the engine and spark plug," and that the dangers of spilled gasoline coming into contact with an engine are generally known. 393 S.E.2d at 67. The court consequently concluded as a matter of law that the peril of an open fuel tank resting over the engine and its spark plug was "an obvious or patent peril," and that the product was thus not defective. *Id.* at 68.

barred from recovery.' " [5] *Center Chemical Co. v. Parzini*, 234 Ga. 868, 870, 218 S.E.2d 580 (1975) (citation omitted). The first part of the test, actual knowledge of the defect and danger, is fulfilled because appellant had subjective knowledge that the helmet she purchased only covered a portion of her head. Had appellant, somehow, been unaware that the helmet only partially covered her head, the result might be different. As counsel for appellant admitted at oral argument, however, there is no evidence that she thought the helmet covered more of her head than it did cover, or that she believed it would protect her from injury to parts of her body not covered. Nor do we find, after our careful review of the transcript, any testimony to that effect. As for the second portion of the test, unreasonable use, it seems axiomatic to say that it is unreasonable to use a helmet to protect a portion of the body that the helmet clearly does not cover.

In sum, the district judge properly granted appellee Skid Lid's motion for a JNOV.

### B. *Comments on the Evidence*

■ At the close of the case, the district judge employed the time-honored, though little used, right and duty of a federal trial judge to comment on the evidence. As the Supreme Court stated in *Quercia v. United States*, 289 U.S. 466, 469, 53 S.Ct. 698, 698–99, 77 L.Ed. 1321 (1932):

> In a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law. (citation omitted) In charging the jury, the trial judge is not limited to instructions of an abstract sort. It is within his province, whenever he thinks it necessary, to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence, by drawing their attention to the parts of it which he thinks important; and he may express his opinion upon the facts, provided he makes it clear to the jury that all matters of fact are submitted to their determination. (citations omitted) Sir Matthew Hale thus described the function of the trial judge at common law: "Herein he is able, in matters of law emerging upon the evidence, to direct them; and also, in matters of fact to give them a great light and assistance by his weighing the evidence before them, and observing where the question and knot of the business lies, and by showing them his opinion even in matters of fact; which is a great advantage and light to laymen. (citation omitted)

The trial judge will not be reversed unless his comments "excite a prejudice which would preclude a fair and dispassionate consideration of the evidence." *Id.* at 472, 53 S.Ct. at 700. *See also United States v. Hope*, 714 F.2d 1084, 1088 (11th Cir.1983) ("[a] trial judge may comment upon the evidence as long as he instructs the jury that it is the sole judge of the facts and that it is not bound by his comments and as long as the comments are not so highly prejudicial that an instruction to that effect cannot cure the error").[6] It is only where

---

5. This test, in contrast to the open and obvious rule, looks to the subjective perceptions of the user or injured party. Another difference between assumption of the risk and the open and obvious rule is that while the latter places the burden of proof on the plaintiff, the former places it on the defendant. *Weatherby*, 393 S.E.2d at 66. *See also* Annotation, *Products Liability: modern status of rule that there is no liability for patent or obvious dangers*, 35 A.L.R. 4th 861, 865 (1985) (discussing open and obvious rule and the differences from assumption of the risk).

6. Other circuits have adopted similar language regarding a trial judge's right to comment on the evidence. *See, e.g., White v. City of Norwalk*, 900 F.2d 1421 (9th Cir.1990); *Johnson v. Helmerich & Payne, Inc.*, 892 F.2d 422 (5th Cir. 1990); *Vaughn v. Willis*, 853 F.2d 1372 (7th Cir.1988); *United States v. Munz*, 542 F.2d 1382 (10th Cir.1976), *cert. denied*, 429 U.S. 1104, 97 S.Ct. 1133, 51 L.Ed.2d 555 (1977); *Mihalic v. Texaco, Inc.*, 377 F.2d 978 (3d Cir.1967); *Meadows v. United States*, 144 F.2d 751 (4th Cir. 1944); A number of practitioners and commentators have also assessed the role of the judge in a jury trial. *See, e.g.*, Bancroft, *Jury Instructions, Communications, Juror Substitutions and Special/Partial Verdicts: Selected Topics—The Principal Law*, 340 Prac.L.Inst. 611 (1987); Loeffler, *Project—Seventeenth Annual Review of Criminal Procedure: United States Supreme Court and Courts of Appeals 1986–1987 (III. Tri-*

this prejudice exists that the substantial rights of the parties are affected and Fed. R.Civ.P. 61 permits disturbing a judgment.[7] In assessing whether this prejudice exists and has affected the parties' substantial rights, we consider the record as a whole and not merely isolated remarks. *See Newman v. A.E. Staley Mfg. Co.*, 648 F.2d 330, 334–335 (5th Cir. Unit B June 1981). "[T]he test is not whether the charge was faultless in every particular but whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine those issues." *Bass v. International Bhd. of Boilermakers*, 630 F.2d 1058, 1065 (5th Cir.1980) (citations omitted).

■ Appellants allege that the district judge went too far in commenting on the evidence and on the testimony of their expert, Mr. Green. We do not doubt that a trial judge could misuse his authority.[8] After careful review of the record, however, while we are not prepared in this case to suggest the outside limits on a trial judge's

comments, we are satisfied that the district judge here did not overstep his bounds. As recounted in Part I.B. of this opinion, he went to great lengths to assure that the jury understood that it was the sole fact-finder in the case.[9] When his remarks are considered in their entirety, on the facts of this case we find no prejudice affecting the substantial rights of the parties.

In the course of his remarks, appellant also contends that the trial judge improperly restricted her case to the testimony of her one expert, Mr. Green. In stressing the importance of Mr. Green's testimony to appellant's case, the judge stated as follows:

In this case, as in every case, there are the two big main issues: one, liability, and, two, the amount of any damages proximately flowing therefrom. The plaintiff has the burden of proving each and every element of the plaintiff's case. The plaintiff's entire case here, and in meeting the elements which must be proved, rests upon the expert testimony,

---

*al: Authority of the Trial Judge)*, 76 Geo.L.J. 986 (1988); Murphy, *Errors in the Charge*, 14 Litig. 39 (1988).

7. Fed.R.Civ.P. 61 provides in part:
"No error ... is ground for granting a new trial ... unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

8. Perhaps one of the best examples of a jury charge that would constitute an abuse of authority today, but was permitted prior to *Quercia*, is Judge Emory Speer's eight and one-half hour, 92 page charge in *United States v. Greene*, 146 F. 803 (S.D.Ga.1906), *cert. denied*, 207 U.S. 596, 28 S.Ct. 261, 52 L.Ed. 357 (1907). In testimony before a congressional committee looking into the possibility of impeaching Judge Speer, Alexander Lawrence (one of Greene's defense attorneys) characterized the judge and his charge as follows:
[H]e knows the jury, knows how to play on their passions, on their prejudices, as no living man that I have seen could do it; he has a faculty for marshalling evidence that I have never seen another living man able to marshal; and in that *Greene & Gaynor* case he charged that jury for eight hours and I will challenge any six prosecuting attorneys in the United States, from the Attorney General

down, all of them together, to take that mass of testimony taking three months' time that Judge Speer heard, and then put it down in as ingenious an argument against the defense as Judge Speer put it in that thing. It was a masterpiece of oratory, but a very poor thing when you come down to look at it from a judicial standpoint.
H.Res. 234, 63rd Cong., 2d Sess. (1914) (Minority Report of Representative Volstead).
Since, *Quercia*, many appeals courts have overturned cases where the trial judge has gone too far. *See, e.g., Bentley v. Stromberg–Carlson Corp.*, 638 F.2d 9, 11 (2d Cir.1981) (trial judge's comments to the jury gave all the arguments for the defendant, being "tantamount to directing a verdict" for defendant); *McCullough v. Beech Aircraft Corp.*, 587 F.2d 754, 761 (5th Cir.1979) (trial judge's mistaken assertions virtually destroyed appellant's circumstantial case, requiring reversal); *Maheu v. Hughes Tool Co.*, 569 F.2d 459, 471–472 (9th Cir.1978) (trial judge's comments amounted to "personal character reference" for witness and thus "went too far").

9. It seems that the jurors responded to the trial judge's direction that they were the sole fact-finders. The judge brought to their attention that appellant's expert had been prepared to testify that the helmet was defective because of one set of facts and then shifted his reasoning when that set of facts was disproven; nevertheless, the jury still awarded appellant $265,000 against the helmet manufacturer.

that is, the expert opinion, of Mr. Green. Except for Mr. Green's testimony, the plaintiff has not made out a case of liability. With Mr. Green's testimony, the plaintiff has made out a legal case on liability; therefore, the court suggests that the first, immediate, and crucial issue in the case for you to determine is the credibility or the believability of Mr. Green.

After studying the record, we find no merit in appellant's contention. We are, inclined to agree with the trial judge that, without Mr. Green, the case would not have been one for the jury.

In sum, we find that on the facts of this case the trial judge's comments to the jury, when taken as a whole, neither excited a prejudice affecting the substantial rights of the parties nor incorrectly instructed the jury.

## C. *The Allegedly Similar Accident*

 Appellant argues that the trial court erred by refusing to admit evidence of the collapse of another wheel manufactured by appellees Trek and Opportunity. Appellant sought to show appellees' notice of a defect in the wheel, the magnitude of the danger, appellees' ability to correct a known defect, the lack of safety for intended purposes,

the strength of the product, the standard of care, and causation.

The trial judge denied the proffer on the grounds that the evidence was not probative because of the necessity for a considerable amount of extrinsic evidence to determine whether the incidents were sufficiently similar to meet the standards of Fed.R. Evid. 403.[10] A trial judge has broad discretion over the admission of evidence, *Borden, Inc. v. Florida East Coast Ry. Co.*, 772 F.2d 750, 754 (11th Cir.1985), and we find that the district judge did not abuse his discretion.[11]

## D. *The Charge on "Legal Accident"*

 In his instructions to the jury, the judge included a charge on "legal accident."[12] To determine whether such a charge is appropriate, we first look to Georgia substantive law. *See Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *McCullough v. Beech Aircraft Corp.*, 587 F.2d 754, 759 (5th Cir. 1979). Georgia law permits a charge on "legal accident" where there is evidence in the record authorizing a finding that the occurrence was an "accident."[13] *Chadwick v. Miller*, 169 Ga.App. 338, 344, 312

---

**10.** The cause of the alleged similar incident had never been established because that case settled out of court. The parties in the instant case vigorously dispute the actual cause, demonstrating that even had the trial court reached the issue of whether the two incidents were similar this issue would have required a trial within a trial.

**11.** Because of our disposition of this issue, we need not reach the question of whether the two incidents were actually similar, and if so, whether the prior incident would have been properly excluded under Fed.R.Evid. 403.

**12.** This portion of the charge reads as follows:
Now, let me tell you that the mere fact that an accident happened or an occurrence happened from which injury stemmed standing alone does not permit a jury to draw any inference that the occurrence was caused by anyone's negligence or by any defect.
Now, I have used the word "accident" loosely, as I think is commonly the practice, is interchangeable with the word occurrence producing injury, but in Georgia law accidental injury means, in connection with personal injury ac-

tions such as this, any injury which occurs without being caused by the negligence either of the plaintiff or of the defendants. The idea of accident removes responsibility for the cause of the injury if found to have occurred by reason of a legal accident as defined under Georgia law, that is, one which is caused by the negligence neither of the plaintiff or the defendants.
It is necessary that you find from a preponderance of the evidence in this case, in order to find for the plaintiff, that the occurrence and/or resulting injuries were the result of defect and/or negligence and/or breach of warranty to the exclusion of legal accident, as I have defined that term to you, because the plaintiff has the burden of proof, as I will charge you later, to demonstrate by a preponderance of the evidence that the occurrence did, in fact, result from defect and/or negligence and/or breach of warranty, to the exclusion of legal accident.

**13.** "Accident" is defined as "an occurrence which takes place in the *absence of negligence* and for which no one would be liable." *Chadwick*, 169 Ga.App. at 344, 312 S.E.2d 835.

S.E.2d 835, 840 (1983).[14] Where appropriate, the charge is valid in a products liability case. *Kemp v. Bell–View, Inc.,* 179 Ga.App. 577, 579, 346 S.E.2d 923, 926 (1986).

Because the manner of giving jury instructions is procedural rather than substantive, it is governed by federal rather than state law. *McCullough,* 587 F.2d at 759. In reviewing alleged errors in jury instructions, we must determine whether the trial court's charge, considered as a whole, "sufficiently instruct[s] the jury so that the jurors understand the issues involved and are not misled." *Mark Seitman & Assocs., Inc. v. R.J. Reynolds Tobacco Co.,* 837 F.2d 1527, 1531 (11th Cir. 1988) (citation omitted). We will only reverse if we are left with "a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *Id.* (citation omitted).

After careful review, we find evidence in the record that supports a charge on legal accident as defined by Georgia law. We are therefore satisfied that the district judge properly guided the jury with respect to this issue.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

14. Appellant cites *Seaboard Coastline R.R. Co. v. Delahunt,* 179 Ga.App. 647, 347 S.E.2d 627 (1986), for the proposition that a charge on "legal accident" can be given only where there is no evidence of negligence on the part of either party. The Georgia Court of Appeals recognized in *Stiltjes v. Ridco Exterminating Co.,* 192 Ga. App. 778, 386 S.E.2d 696, 697 (1989), however, that *Delahunt* had misstated the law in Georgia.