William Michael Griffin injured his ankle while he was hunting deer, using equipment manufactured by the defendant, Summit Specialties, Inc. Griffin sued Summit, making claims based on theories of negligence, *Page 1301 
strict liability, and failure to warn of latent dangers in the operation of the defendant's treestand. The circuit court entered a summary judgment in favor of Summit Specialties, Inc. Griffin appeals; we affirm.
Griffin claims that the treestand manufactured by Summit was defective because of its design. The Summit treestand consists of one part, but Summit also manufactures another product that it markets as a "Quickclimber." While the Summit treestand and the Summit Quickclimber may be used in conjunction with each other, they are distinct products, sold separately. The treestand may be used with a wide variety of climbing aids, such as a rope or a strap, and the "Quickclimber" is not a part of, and is in no way essential to the operation of, the treestand.[1]
On the morning of the accident, Griffin used the treestand and the Quickclimber while hunting, and the equipment worked satisfactorily. He returned in the afternoon to hunt again and utilized the same equipment. While either climbing up a tree, or descending (there is conflicting testimony on this issue), the treestand became disengaged from Griffin's feet and it fell to the ground. No part of either the treestand or the Quickclimber broke or failed. After the treestand became disengaged from Griffin's feet and fell to the ground, he attempted to descend the tree by wrapping his legs around the tree and using the Quickclimber. As he was descending he fell, injuring his ankle.
It is important to note that, even though this is a products liability case, it does not involve any contention that some part or component of a product manufactured by Summit failed, broke, or malfunctioned. The contention is that the product did not include some feature, accessory, or device that Griffin contends would have improved the safety characteristics of the product. Griffin contends that the treestand was defective because it did not have a tether or connector between it and the Quickclimber, and that the Quickclimber proximately caused or contributed to his injury. In conjunction with the claimed design defect (the absence of a connecting tether), Griffin also mentions two other features that he suggests might have been designed better. These two features were: (1) the design of the straps on the platform of the treestand by which it was attached to the foot of a hunter using it; and (2) the design of the metal bar frame of the treestand; that frame is bolted in position around a tree and, through compression generated by the hunter's putting pressure on the treestand platform, it holds the treestand on the tree while it is in use. The design of this frame on the treestand did not include a serrated or knife-like edge to cut into the tree. Griffin suggests that if such a feature had been included in the design of the treestand, it might have increased its safety.
The sole issue on appeal, as stated by the appellant, is "[w]hether the trial court erred in granting Summit's Motion for Summary Judgment by holding, as a matter of law, thatone of plaintiff's alleged defects was open and obvious."
The accident occurred in Georgia. Alabama follows the principle of lex loci delicti; therefore, the substantive law of Georgia relating to product liability claims is to be applied. See Fitts v. Minnesota Mining Manufacturing Co.,581 So.2d 819 (Ala. 1991). Questions related to the motion for summary judgment are procedural and are governed by the provisions of Rule 56, Ala.R.Civ.P. Bagby Elevator ElectricCo. v. Buzbee, 383 So.2d 173, 176 (Ala. 1980). *Page 1302 
While the action of the trial court in entering a summary judgment, and the appellate review of that action, are matters governed by Alabama's procedural rules, this circumstance does nothing to diminish the guidance provided by decisions of Georgia courts involving summary judgments in products liability cases. The procedural rules and the standard of review relating to summary judgments are the same in Georgia as in Alabama. The Alabama summary judgment procedures found in Rule 56, Ala. R.Civ.P., are the same as those found in the Georgia Civil Practice Act, S 9-11-56, Official Code of Georgia. The Georgia courts apply and interpret the summary judgment procedure the same as do the courts of Alabama.
 "To prevail at summary judgment under OCGA S 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact, that the undisputed facts, viewed in the light most favorable to the non-moving party, warrant judgment as a matter of law."
Sullenberger v. Grand Union Co., 201 Ga. App. 194,410 S.E.2d 381 (1991).
 "On a motion for summary judgment, the movant must prove that there exists no issue of material fact and that judgment should be granted as matter of law. It is axiomatic that all inferences are resolved in favor of the party opposing the motion."
Griffin v. Crown Central Petroleum Co., 171 Ga. App. 534,320 S.E.2d 383 (1984). As in Alabama, the party opposing a summary judgment motion is to be given the benefit of all reasonable doubts in determining whether a genuine issue of material fact exists, and the trial court must give that party the benefit of all favorable inferences that can be drawn from the evidence.Holland v. Sanfax Corp., 106 Ga. App. 1, 126 S.E.2d 442 (1962).
In Alabama, in order to enter a summary judgment, the trial court must determine: 1) that there is no genuine issue of material fact, and 2) that the moving party is entitled to a judgment as a matter of law. In determining whether a summary judgment was properly entered, the reviewing court must view the evidence in a light most favorable to the nonmovant. SeeTurner v. Systems Fuel, Inc, 475 So.2d 539, 541 (Ala. 1985);Ryan v. Charles Townsend Ford, Inc., 409 So.2d 784 (Ala. 1981). Rule 56 is read in conjunction with the "substantial evidence rule" (§ 12-21-12, Ala. Code 1975), for actions filed after June 11, 1987. See Bass v. SouthTrust Bank of Baldwin County,538 So.2d 794, 797-98 (Ala. 1989). On a motion for summary judgment, when the movant makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the nonmovant to present "substantial evidence" in support of his position. Bean v. Craig, 557 So.2d 1249, 1252 (Ala. 1990).
Product liability claims in Georgia may be presented either on the basis of a manufacturer's negligence or under the Georgia strict liability statute, OCGA § 51-1-11. This statute is, in effect, a codification of § 402A, Restatement (Second)of Torts (1965). A design defect product liability case in Georgia, based on a claim of negligence on the part of the manufacturer, proceeds on the traditional notions of duty and reasonable care. Under the strict liability statute, negligence or fault on the part of a manufacturer of a product need not be shown. As a practical matter, any conduct by a manufacturer that would give rise to a product liability claim based on negligence, i.e., conduct that produced a defective product, will necessarily sustain a strict liability claim. It is often observed by the Georgia courts in design defect product liability cases that "only semantics distinguishes" between an action based on negligence and one based on Georgia's strict liability statute.
The Georgia courts have declared a number of principles that limit or restrict a manufacturer's liability, even under the Georgia strict liability doctrine. A manufacturer does not occupy the status of an insurer with respect to a product design, Hunt v. Harley-Davidson Motor Co., 147 Ga. App. 44,248 S.E.2d 15 (1978); nor is a manufacturer under any obligation to make a product "accident proof or foolproof"; *Page 1303 Fortner v. W.C. Cayne Co., 184 Ga. App. 187, 360 S.E.2d 920
(1987); Poppell v. Waters, 126 Ga. App. 385, 190 S.E.2d 815
(1972); nor to make a product "more safe" by adding some additional safety design feature, accessory, or device. Stovall Co. v. Tate, 124 Ga. App. 605, 184 S.E.2d 834 (1971). Thus, no liability is placed on the manufacturer of a product by proof that some other, or perhaps even safer, component, or more effective safety device, could have been incorporated in or added to the design of the product. Gragg v. Diebold, Inc.,198 Ga. App. 823, 403 S.E.2d 229 (1991); Weatherby v. HondaMotor Co., 195 Ga. App. 169, 393 S.E.2d 64 (1990); Stodghill v.Fiat-Allis Construction Machinery, Inc., 163 Ga. App. 811,295 S.E.2d 183 (1982); Trailmobile, Inc. v. Smith,181 Ga. App. 134, 351 S.E.2d 528 (1986); Hunt v. Harley-Davidson Motor Co., supra; Barnes v. Harley-Davidson Motor Co., 182 Ga. App. 778,357 S.E.2d 127 (1987).
Under Georgia law, a comprehensive limitation on the liability of a manufacturer when a design defect claim is presented, is the "open and obvious" rule. The Georgia courts have consistently held that "[i]f a product is designed so that it is reasonably safe for the use intended, the product is not defective even though capable of producing injury, if the injury results from an open and obvious peril." Gragg, supra;Weatherby, supra; Honda Motor Co. Ltd. v. Kimbrel,189 Ga. App. 414, 376 S.E.2d 379 (1988); Hunt, supra; Barnes, supra;Poppell, supra; Fortner, supra; Stodghill, supra.
Under Georgia law, the "open and obvious rule" is decisive as to the initial determination whether a product is defective. Unless a product is defective, an injury from its use does not give rise to a products liability claim. This is true whether the claim is based on negligence of the manufacturer or on the strict liability doctrine. Coast Catamaran Corp. v. Mann,171 Ga. App. 844, 321 S.E.2d 353 (1984); Weatherby, supra.
The Georgia strict liability statute, § 51-1-11(b)(1), OCGA is as follows:
 "The manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained."
The phrase "not merchantable and reasonably suited to the use intended" under the Georgia law means that, in a strict liability claim, "a plaintiff must establish that there is a defect in the product". Mann v. Coast Catamaran Corp.,254 Ga. 201, 326 S.E.2d 436 (1985). Under Georgia law, a product is not defective if the injury-threatening condition, or the absence of a feature that might guard against a common danger connected with the use of the product, is open and obvious, Stodghill, supra; and whether a condition is "open and obvious" is determined by objective, not subjective, considerations.Weatherby, supra.
In Weatherby, the alleged defects were the absence of a device to attach the cap to the gasoline tank, and the absence of a shield to prevent spilled gasoline from coming into contact with the spark plug. The plaintiffs argued, just as does Griffin, that the dangers of the condition created by the alleged design defects were not generally known, i.e., that the condition was not "open and obvious". The Georgia court did not agree that jury issues were presented:
 " 'While in many cases the defense based upon the obvious and common nature of the peril will be a question to be determined by the jury, a manufacturer is entitled to judgment as a matter of law in plain and palpable cases.' . . . We conclude, as a matter of law, that the injuries at issue in this case resulted from an obvious or patent peril."
195 Ga. App. at 173, 393 S.E.2d at 67-68.
Certainly, the absence of a connecting tether between the treestand and the *Page 1304 
Quickclimber is no less palpable, obvious, or patent than the absence of a device attaching the cap of the gasoline tank to the tank itself, or of a device to shield the spark plug from spilled gasoline. It is also apparent that the danger that the treestand could fall to the ground if it became disengaged from the climber's feet is no less obvious than the danger that gasoline might splash from a tank, fall on a spark plug, and ignite.
Griffin argues that the absence of a connecting tether between the treestand and the Quickclimber created a latent danger of which, he suggests, he was not aware. This exact argument was presented, and rejected, in Stodghill, supra, andWeatherby, supra. The Georgia cases have stated that, in determining the effect of the "open and obvious rule," the awareness of the individual user of the danger created by an obvious condition of the product is irrelevant. In Weatherby, the court stated:
 "Actual knowledge by the user of the danger posed by a product is not necessary in order to invoke the 'open and obvious rule.' "
195 Ga. App. at 172, 393 S.E.2d at 66-67 (emphasis in original).
That there was no connecting tether between the two pieces of equipment would be instantly apparent to anyone using the equipment. Griffin's testimony not only admits his awareness of the condition itself, but it also confirms that he was mindful of the very peril that he now claims the absence of the connecting tether created. Griffin's testimony demonstrates that he knew the consequences that the absence of such a tether could create:
 ". . . [T]here's also a connection that goes to the bottom platform where if it did slip off of your feet it wouldn't drop to the bottom of the tree.
". . . .
 "Q. Did you know why that connecting device [on the treestand] was the only one that was homemade at the house?
"A. Yes.
"Q. Why?
 "A. If the bottom portion of the foot climber portion came off your feet it kept it from going to the bottom of the tree.
". . . .
 "Q. And you knew that the [treestand] that you were buying that was manufactured by Summit did not have [the connector] that the homemade one had on it, right?
"A. Yes."
Also, where a product-related danger is obvious — or is one of which the person who claims to be entitled to warning has actual knowledge — there is no duty to warn. Coast CatamaranCorp., supra. The Georgia courts have held that "a manufacturer has no duty to warn of obvious common dangers connected with the use of a product." Weatherby, supra; Stodghill, supra;Hunt, supra.
The obvious consequence from the absence of a connecting tether between the two pieces of equipment would be that if the treestand was not properly attached to a climber's feet, and became disengaged, it could fall to the ground. This is the event that, Griffin says, produced his injury, and it is the consequence of this event that, in his brief on appeal, he professes ignorance of; but, in his deposition, he acknowledged full awareness.
In Stovall Co. v. Tate, 124 Ga. App. 605, 184 S.E.2d 834
(1971), the court stated:
 "The law does not require . . . that a manufacturer warn or protect against every injury which may ensue from mishap in the use of his product. Almost every physical object can be inherently dangerous or potentially dangerous in a sense. A lead pencil can stab a man in the heart or puncture his jugular vein, and due to that potentiality it is an 'inherently dangerous' object; but, if a person accidentally slips and falls on a pencil point in his pocket, the manufacturer of the pencil is not liable for injury. He has no obligation to put a safety guard on a lead pencil or to issue a warning with its sale. A tack, a hammer, a pane of glass, a chair, a rug, a rubberband, and myriads of other objects are truly 'inherently dangerous,' because they may slip. They *Page 1305 
cause accidents and injury even more often, we expect, than do rubber exercisers. But the doctrines fashioned by the law for inherently dangerous objects do not encompass these things. A hammer is not of defective design because it may hurt the user if it slips. A manufacturer cannot manufacture a knife that will not cut or a hammer that will not mash a thumb or a stove that will not burn a finger. The law does not require him to warn of such common dangers."
After carefully reviewing the record, we conclude that Summit is also entitled to a summary judgment on the basis of Griffin's assumption of the risk associated with the use of the product; he admitted knowledge of the condition of the product that he claims was defective and knowledge of the peril associated with its use.
Griffin also argues that the Summit equipment was defective because there was no warning relating to the absence of a connecting tether. Georgia imposes no requirement that a warning be placed on a product relating to the absence of a connection between it and another product with which it may, or may not, be used.
We conclude that Summit has no duty to warn Griffin of a condition obvious to everyone, or of the obvious potential consequence of the condition that was known to him. For the reasons stated, the judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES, HOUSTON and KENNEDY, JJ., concur.
[1] The design of the Summit treestand is such that the platform of the stand attaches by straps to the hunter's boots. A metal bar system attached to the platform of the treestand is then bolted around the tree to be climbed. The hunter can then climb the tree, if he wishes, by simply wrapping his arms around the tree, lifting the treestand with his feet, and then placing pressure on the platform of the treestand, thereby clamping it to the tree, and then moving his arms upward around the tree and repeating the process. A hunter may also use a climbing aid, such as the Quickclimber, or a rope or strap wrapped around the tree. Neither the Quickclimber nor any other aid is essential to the use of the Summit treestand.